**Gwendolyn P. JOHNSON, et al., Appellants,**

v.

**ALLIED EASTERN STATES MAINTENANCE CORPORATION, Appellee.**

**No. 83–1495.**

District of Columbia Court of Appeals.

Argued Oct. 17, 1984.

Decided March 5, 1985.

Melissa Rhea, Washington, D.C., with whom Robert Cadeaux, Washington, D.C., was on brief, for appellants.

Thomas P. Ryan, Rockville, Md., with whom James T. Wharton, Rockville, Md., was on brief, for appellee.

Before MACK and TERRY, Associate Judges, and YEAGLEY, Associate Judge, Retired.

TERRY, Associate Judge:

The sole issue presented on this appeal is whether appellants' personal injury action against Allied Eastern States Maintenance Corporation ("Allied") was barred by the two-year statute of limitations contained in the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. No. 876 (1934), commonly known as the Warsaw Convention. We hold that it was and affirm the trial court's order granting summary judgment to Allied.

## I

On July 12, 1978, Gwendolyn and Zaccheus Johnson had reservations to fly from Baltimore, Maryland, to Nassau, in the Bahamas, aboard Eastern Airlines Flight 941. They were driven to Baltimore-Washington International Airport by their son. When they arrived, a skycap employed by Allied[1] greeted them and offered a wheelchair to Mrs. Johnson, a victim of arthritis, just as she stepped out of the car.[2] She accepted and got into the wheelchair, and the skycap pushed her through the terminal, past the check-in gate, and onto a boarding ramp which led to the airplane. Halfway down the ramp, however, the wheelchair hit a metal strip and tipped over,[3] throwing Mrs. Johnson against the wall and then onto the floor. Although the Johnsons continued on their journey to Nassau, Mrs. Johnson was in considerable pain for several days. She later learned that she had broken a bone in her foot and suffered various other injuries.

On July 10, 1981, almost three years later, Mr. and Mrs. Johnson filed this action against Allied for damages resulting from Mrs. Johnson's fall.[4] Allied moved for summary judgment on the ground that appellants' action was governed by the Warsaw Convention, and hence was barred by the Convention's two-year statute of

---

1. Allied was under contract with both the airport and individual airlines, including Eastern, to perform skycap services throughout the terminal.

2. Mrs. Johnson normally walked with the aid of crutches. The record indicates that she was already out of the car when the skycap approached.

3. Mrs. Johnson testified in her deposition that the skycap was pushing the wheelchair along the ramp "at a fast rate of speed."

4. Mrs. Johnson sought compensation for her medical expenses and for pain and suffering; Mr. Johnson's claim was for loss of consortium.

The Johnsons also filed an action against Eastern Airlines. That action was dismissed, however, and is not part of this appeal.

limitations. The Johnsons opposed the motion, arguing that the Convention applied only to actions against carriers and their employees, not to actions against third parties or independent contractors such as Allied. The court granted Allied's motion, and the Johnsons noted this appeal.

## II

■ The Warsaw Convention is a multilateral international agreement which was opened for signature in 1929 and adopted by the United States in 1934. Its primary objectives were to establish a uniform body of world-wide liability rules to govern international aviation and to limit the potential liability of air carriers.[5] *See, e.g., Reed v. Wiser,* 555 F.2d 1079, 1089–1090 (2d Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); Lowenfeld & Mendelsohn, *The United States and the Warsaw Convention,* 80 HARV.L.REV. 497, 498–499 (1967). To achieve these objectives, several restrictions on liability were included in chapter III of the Convention, which is captioned "Liability of the Carrier." The first article in chapter III, article 17, provides:

> The carrier shall be liable for damages sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Article 24 provides, however, that in cases covered by article 17 "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." Among these "conditions and limits" is the statute of limitations contained in article 29, which provides in pertinent part:

> The right to damages shall be extinguished if an action is not brought within two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.

Although the statute of limitations and the other "conditions and limits" set forth in the Convention clearly apply to actions brought against a "carrier," the Convention does not define that term. It is unclear, specifically, whether the term is intended to embrace only the corporate entity which owns and operates the aircraft—in this case Eastern Airlines—or everyone associated with the enterprise of transporting passengers, including agents, like Allied, who are engaged by the carrier to perform services in furtherance of the contract of carriage.

In *Reed v. Wiser, supra,* the Second Circuit held, after a thorough analysis of the Convention and its legislative history, that the liability limitations set forth in article 22 of the Convention applied not only to actions against the carrier itself but to actions against employees of the carrier as well.[6] In *Reed,* after a TWA flight from Tel Aviv to New York crashed in the Ionian Sea, about fifty miles west of Greece, the personal representatives, heirs, and next of kin of nine passengers killed in the crash brought suit against two of TWA's corporate officers. In their answer the officers

---

5. Limits on the liability of carriers were deemed necessary to protect them from financial ruin due to a single catastrophic accident and to enable them to obtain insurance at reasonable rates. *See* Roberts, *An Extension of the Warsaw Convention's Protection: Julius Young Jewelry Mfg. Co. v. Delta Airlines,* 5 N.C.J. INT'L L. & COM.REG. 497, 499 (1980).

6. Article 22, as modified by a later agreement known as the Montreal Agreement, provides in pertinent part:

> In the transportation of passengers the liability of the carrier for each passenger shall be limited to the sum of [$75,000]. Where, in accordance with the law of the court to which the case is submitted, damages may be awarded in the form of periodical payments, the equivalent capital value of the said payments shall not exceed [$75,000]. Nevertheless, by special contract, the carrier and the passenger may agree to a higher limit of liability.

pleaded the liability limitations set forth in article 22. The District Court struck the defense, ruling that the liability limitations applied only to actions against the carrier, not its employees.

On an interlocutory appeal this ruling was reversed. The Second Circuit noted that although a strict reading of the Convention—given the principles of agent liability under the common law[7]—would lead to the conclusion that the liability limitations applied only to actions against a carrier, "the Convention was intended to act as an international uniform law ... and therefore must be read in the context of the national legal systems of all of its members." 555 F.2d at 1083 (citation and footnote omitted). The court did not examine the legal systems of all the signatory nations, which numbered more than 100, but it did observe "that in at least some jurisdictions the language of [article 22] would have the effect of limiting the liability of the carrier's employees as well as that of the carrier." *Id.* It also referred to a statement by Professor Ambrosini of Italy, the author of the original draft convention submitted to the Warsaw conference, as reported in the minutes of a later conference:

He had always thought that the Warsaw Convention regulated not only the liability of the carrier, but, at the same time, that of his servants or agents, and *especially for the simple reason that, in*

*his opinion, the carrier and his servants or agents were, from the legal point of view, the same person.*

*Id.* (citation omitted; emphasis added by the court).

The court, moreover, took issue with the English translation of the official French text of the Convention, specifically the word "cas" in article 24.[8] While "cas" was translated in article 17 as "event,"[9] it was translated in article 24 as "cases,"[10] so that article 24 read in part:

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

49 Stat. 3020. The court declared that this translation was "probably inaccurate for the reason that the word 'cas' is not ordinarily used to refer to a lawsuit." 555 F.2d at 1084. The court went on to provide its own "less ambiguous rendition" of article 24:

(1) In the events anticipated in articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

---

**7.** *I.e.,* the rule that permits an injured party to recover from an agent as well as a principal.

**8.** The official French text of article 24 reads in part:

(1) Dans les cas prévus aux articles 18 et 19 toute action en responsabilité, à quelque titre que ce soit, ne peut être exercée que dans les conditions et limites prévues par la présente Convention.

(2) Dans les cas prévus à l'article 17, s'appliquent également les dispositions de l'alinéa precédent. . . .

49 Stat. 3006.

**9.** The official French text of article 17 reads:

Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou

de toute autre lésion corporelle subie par un voyageur lorsque l'accident qui a causé le dommage s'est produit à bord de l'aéronef ou au cours de toutes opérations d'embarquement et de débarquement.

49 Stat. 3005. The unofficial English translation reads:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018.

**10.** "Cas" is both a singular and a plural form. It appears in the singular in article 17, and in the plural in article 24.

(2) In the events covered by article 17 the provisions of the preceding paragraph shall also apply....

*Id.* Under this translation, the court concluded, the liability limitations applied to the plaintiffs' suit against TWA's corporate officers because "(1) the suit against the carrier's employees [was] an 'action for damages, however founded' (Art. 24(1)) and (2) it [sought] damages sustained 'in the event of the death ... of a passenger ... on board the aircraft ...' (Art. 17)." *Id.* (citation omitted).

Finally, and most significantly for this case, the court sought to give effect to "the overall purposes of the Convention...." *Id.* at 1088. The court focused its attention on two of those purposes: "to fix at a definite level *the cost to airlines* of damages sustained by their passengers and of insurance to cover such damages," *id.* at 1089 (emphasis in original), and "to establish a uniform body of world-wide liability rules to govern international aviation, which would supersede with respect to international flights the scores of differing domestic laws...." *Id.* at 1090 (footnote omitted). After considering the potential consequences of upholding the District Court's narrow reading of article 22, the Court of Appeals concluded that its own broader interpretation would better serve the Convention's purposes.

We find the *Reed* opinion most persuasive. Although the Convention is ambiguous, in that it does not expressly extend its coverage to employees or agents of a carrier, we believe that the purposes underlying the Convention would best be served by a construction which brings under its aegis not only the carrier's employees, as in *Reed*, but also those agents who perform services in furtherance of the contract of carriage. This will ensure that the rules governing international aviation remain uniform and that the liability limitations remain intact, regardless of whom a plaintiff may choose to name as a defendant in a particular case. Other courts have reached the same conclusion. *See, e.g.,*

*Baker v. Lansdell Protective Agency, Inc.,* 590 F.Supp. 165 (S.D.N.Y.1984) (liability limitations in Warsaw Convention applied in action against agent performing security checks at airport); *Julius Young Jewelry Manufacturing Co. v. Delta Air Lines,* 67 A.D.2d 148, 414 N.Y.S.2d 528 (1979) (liability limitations in Warsaw Convention applied in action against independent contractors engaged by airlines to perform interline baggage transfer services); *Garlitz v. Allied Aviation Service International Corp.,* 17 Av.Cas. (CCH) 17,238 (N.Y.Sup. Ct.1982) (statute of limitations in Warsaw Convention applied in action against independent contractor providing services which the airline itself could have provided).

Appellants argue that the test for determining whether the Convention applies should be whether the service provided by the agent (or independent contractor) is essential to the operation of the carrier's business. Given the purposes of the Convention, we cannot agree. We hold instead that the test is merely whether the particular activity of the agent which resulted in injury was in furtherance of the contract of carriage. In this case that test is easily met. Putting the passenger on the plane is surely in furtherance of the contract of carriage. If there had been no skycap and no service contract between Allied and Eastern Airlines, the airline itself would have had to assist Mrs. Johnson in boarding the plane. Since Allied was performing part of the airline's duty under the contract of carriage, it is entitled to the same protection—no more and no less—that the airline would have under the Convention.

We therefore hold that this action against Allied was subject to the provisions of the Warsaw Convention, specifically the two-year statute of limitations contained in article 29. Since the Johnsons did not file their complaint within two years after arriving at their destination, the trial court was correct in ruling that their action was barred.

*Affirmed.*