GERARD R. LEAR, as Administrator of the Estate of HANS-DIETER LEPRICH, Deceased, et al., Appellants-Respondents, v NEW YORK HELICOPTER CORP. et al., Respondents-Appellants, and TURBOMECA, S.A., et al., Appellants-Respondents.

Second Department, April 19, 1993

8

**APPEARANCES OF COUNSEL**

*Speiser, Krause, Madole & Nolan,* New York City *(Frank H. Granito, Jr.,* and *David H. Siegel* of counsel), for plaintiffs-appellants-respondents.

*Mendes & Mount,* New York City *(James C. Miller* of counsel), for defendants-appellants-respondents.

*Shaw, Licitra, Esernio & Schwartz, P. C.,* Garden City *(J. Stanley Shaw, Herbert J. Tamres* and *Donnalynn Darling* of counsel), for New York Helicopter Corp. and another, as appellants.

*Katten, Muchin Zavis & Dombroff,* New York City *(Mark A. Dombroff, Edward C. DeVivo* and *Lawrence S. Rosen* of counsel), for New York Helicopter Corp. and others, as respondents.

**OPINION OF THE COURT**

Per Curiam.

The decedent, a German citizen, perished in a fatal helicopter crash on April 26, 1985, when the helicopter in which he was a passenger plunged into the East River and he allegedly was unable to free himself from his restraining lapbelt. This action to recover damages for his wrongful death ensued. It is alleged that the defendants Island Helicopter Corp. (hereinafter IHC), Island Helicopter, Inc. (hereinafter IHI), New York Helicopter Corp. (hereinafter NYHC) and Transleisure Corp. (hereinafter Transleisure) are related domestic corporations engaged in the carriage of persons for hire in aircraft which they "jointly and/or severally owned" and leased commercially. The defendant Island Helicopter International, Ltd. (hereinafter IHIL) is allegedly a foreign corporation doing business in New York and engaged in the ownership, leasing, sale, use, and operation of aircraft, including the helicopter involved in this case. The defendants Turbomeca Engine Corp. and Turbomeca Company (hereinafter the Turbomeca defendants) are related foreign corporations which purportedly manufactured and placed into the stream of commerce the engine parts found in the subject helicopter. The action has been discontinued with respect to the defendant IHIL, while the potential for any recovery from the defendant Transleisure has been severely curtailed as a consequence of its petitioning for bankruptcy. The instant appeals have resulted from a number of orders issued in response to the motion practice conducted by the various parties to this complex litigation.

 Subsequent to the filing of the note of issue, the plaintiffs moved for leave to serve a supplemental and amended bill of particulars in order to assert additional theories of recovery.

In an order dated June 18, 1990, the court granted the motion and ordered the action removed from the trial calendar until such time as the defendants had received an adequate opportunity to conduct further discovery. The plaintiffs appealed from that portion of the order which directed the removal of the case from the calendar. However, while the appeal was pending, they successfully moved to restore the action to the calendar, and an order directing the restoration was issued on April 1, 1991. Hence, the appeal from the June 18, 1990 order has been rendered academic and must be dismissed. To the extent the plaintiffs contend that the case was improperly restored to the bottom of the calendar, we note that this contention is addressed in our resolution of the plaintiffs' companion appeal from the order dated April 1, 1991 *(see, Lear v New York Helicopter Corp.* [appeal No. 91-06533], — AD2d — [decided herewith]). Similarly, the plaintiffs' appeal from that portion of the order dated October 5, 1990, which denied their cross motion to reargue the removal of the case from the calendar, must also be dismissed both as academic and because no appeal lies from the denial of reargument *(see, Mucciola v City of New York,* 177 AD2d 553; *Huttner v McDaid,* 151 AD2d 547).

■ However, insofar as the plaintiffs appeal from that portion of the order dated October 5, 1990 which required them to produce English translations of the decedent's German tax records for discovery and inspection, the appeal has merit. Indeed, in recognition of the settled principle that a party may be required to produce only those items "which are in the possession, custody or control of the party" (CPLR 3120 [a] [1] [i]; *see generally, Saferstein v Stark,* 171 AD2d 857; *Corriel v Volkswagen of Am.,* 127 AD2d 729), we have previously held that a party may not be compelled to procure a translation of a foreign-language document which it discloses during discovery *(see, Rosado v Mercedes-Benz of N. Am.,* 103 AD2d 395; *cf.,* CPLR 2101 [b]). Therefore, that portion of the order of October 5, 1990 directing the plaintiffs to produce English translations of the decedent's tax documents must be reversed *(see, e.g., Durham Med. Search v Physicians Intl. Search,* 122 AD2d 529).

■ The plaintiffs further take issue with that portion of an order of the Supreme Court dated September 5, 1990, which, upon the motion of the defendants Transleisure, NYHC, IHC, and IHI, determined that those defendants are entitled to invoke the limitation on liability set forth in the Warsaw

Convention.[1] While we agree with the court's conclusion, the issue requires further discussion.

The 1929 Warsaw Convention (adhered to by the United States in 1934), as modified by the 1966 Montreal Agreement,[2] sought both to achieve some measure of uniformity in the rules relating to international air carriage and to protect air carriers and the fledgling air transport industry by, *inter alia*, limiting liability for the injuries and deaths of passengers. Accordingly, recovery for the death, wounding, or other bodily injury of an international air passenger whose contract of carriage includes a point in the United States is limited by agreement to $75,000 *(see, Rosman v Trans World Airlines,* 34 NY2d 385). The carrier cannot avail itself of the limitation where the harm results from its wilful misconduct. The plaintiffs herein contend that since NYHC was the actual air carrier at the time of the accident, the related corporate defendants Transleisure, IHC, and IHI should not be permitted to invoke the benefits of the Warsaw Convention because they are not "carriers" under the terms of that treaty. Conversely, Transleisure, IHC, and IHI maintain that they are interrelated corporations and perform activities which constitute carrier functions, thereby entitling them to the protection of the treaty by virtue of their status as agents of NYHC. The relevant decisional law supports the Supreme Court's broad interpretation of the term "carrier" so as to include these defendants.

In the seminal case of *Reed v Wiser* (555 F2d 1079, *cert denied* 434 US 922), the United States Court of Appeals for the Second Circuit held that airline employees were entitled to assert the Warsaw Convention as a defense in a lawsuit to recover for the deaths of airline passengers. In doing so, the court made the following pertinent observation: "Should employees not be covered by the provisions of the Convention, the entire character of international air disaster litigation involving planes owned and operated by American airlines, would be radically changed. The liability limitations of the Convention could then be circumvented by the simple device

---

1. Convention for Unification of Certain Rules Relating to International Transportation by Air, 49 US Stat 3000, TS No. 876, 137 LNTS 11, reprinted in 49 USCA § 1502, Historical Note, at 430.

2. Order of Civil Aeronautics Board Approving Increases in Liability Limitations of Warsaw Convention and Hague Protoc[o]l, Agreement CAB 18900, approved by Civil Aeronautics Board Order No. E 28680, reprinted in 49 USCA § 1502, Historical Note, at 437.

of a suit against the pilot and/or other employees, which would force the American employer, if it had not already done so, to provide indemnity for higher recoveries as the price for service by employees who are essential to the continued operation of its airline" *(Reed v Wiser, supra,* at 1082).

Likewise, in *Young Jewelry Mfg. Co. v Delta Air Lines* (67 AD2d 148, 151), an independent contractor engaged by Delta Air Lines to provide interline baggage transfer services was found to be entitled to the protection afforded by the Warsaw Convention because it was "an air carrier's agent performing functions the carrier could or would * * * otherwise perform itself." The Court there reasoned that "[t]o allow an agent * * * which is performing services in furtherance of the contract of carriage, and in place of the carriers themselves, to be liable without limit would circumvent the Convention's purposes of providing uniform worldwide liability rules and definite limits to the carriers' obligations" *(Young Jewelry Mfg. Co. v Delta Air Lines, supra,* at 151).

A similar rationale was employed by the District of Columbia Court of Appeals in *Johnson v Allied E. States Maintenance Corp.* (488 A2d 1341), where the two-year limitations period set forth in the Convention was held to apply to a personal injury action against a corporation which provided skycap services for a carrier. The court noted in part as follows: "the purposes underlying the Convention would best be served by a construction which brings under its aegis not only the carrier's employees * * * but also those agents who perform services in furtherance of the contract of carriage. This will ensure that the rules governing international aviation remain uniform and that the liability limitations remain intact, regardless of whom a plaintiff may choose to name as a defendant in a particular case" *(Johnson v Allied E. States Maintenance Corp., supra,* at 1345). Other decisions also support the expansion of the term "carrier" as used in the Warsaw Convention to include employees and agents of carriers *(see, e.g., In re Air Disaster at Lockerbie,* 776 F Supp 710; *In re Air Crash Disaster at Gander,* 660 F Supp 1202; *Baker v Lansdell Protective Agency,* 590 F Supp 165).

In the instant case, the record demonstrates that Transleisure, IHC, and IHI are the interrelated sister and parent corporations of NYHC and were obligated to perform services (e.g., inspection, maintenance, and repair of the helicopter and its components) for NYHC which were in furtherance of the contract of carriage. Under these circumstances, they were

properly found to be entitled to the protection afforded by the liability limitations of the Warsaw Convention.[3] Furthermore, inasmuch as the additional material submitted by the plaintiffs did not warrant the granting of their subsequent motion for leave to renew, we discern no basis for disturbing the order dated March 8, 1991, denying that motion.

■ Similarly without merit is the appeal by the Turbomeca defendants from an order dated July 16, 1990, which denied their motion to dismiss the plaintiffs' second amended complaint as against them on the grounds that the plaintiffs lack the legal standing to sue and have failed to join a necessary party in the action. The Turbomeca defendants premise their argument on the fact that the dependents of the decedent are receiving payments, akin to workers' compensation benefits, from the German Professional Accident Insurance Agency (hereinafter GLB) as a consequence of the decedent's untimely demise. They claim that under German law, the plaintiffs have assigned their claims to GLB by accepting payments and that GLB is now the real party in interest. Alternatively, the Turbomeca defendants argue that GLB is a necessary party to the action in order to safeguard its interests and to eliminate any risk of double recovery. These contentions are flawed.

The law of New York clearly applies to the issues raised by the Turbomeca defendants (see generally, Schultz v Boy Scouts, 65 NY2d 189). Moreover, pursuant to New York Workers' Compensation Law § 29, the dependents of a decedent may accept the payment of benefits and still pursue their remedy against nonemployer tortfeasors, with the proviso that the insurer has a lien on the proceeds of any resulting recovery. In any event, there has been no assignment of the plaintiffs' claims to GLB. Rather, those parties have agreed that the plaintiffs will continue to prosecute the action and any proceeds recovered will be distributed between them. Indeed, both GLB and the Supreme Court have already demonstrated an understanding that, to the extent of the amount of benefits it pays, GLB is entitled to a lien against the $75,000 which may be recovered from Transleisure, NYHC, and IHC, as well as against any additional amounts recovered by the plaintiffs. Given these circumstances and the plaintiffs' clear right under

---

3. We do not consider the parties' contentions regarding the potential applicability of General Obligations Law § 15-108 to the order dated September 5, 1990, inasmuch as the issue was not properly advanced in the court of first instance (see, Orellano v Samples Tire Equip. & Supply Corp., 100 AD2d 757).

EPTL 5-4.1 to maintain this action, the "lack of standing" argument must fail. Likewise, these facts establish that GLB's interests in the case will be adequately protected and that the Turbomeca defendants will not be held answerable in damages twice for the same wrong. Thus, GLB need not be joined as a necessary party.

■ An appeal also has been taken by NYHC and IHC from portions of another order dated July 16, 1990, which denied part of their motion to dismiss certain cross claims for indemnification asserted against them. However, during the pendency of their appeal, NYHC and IHC successfully moved for reargument. In the ensuing order made upon reargument, dated October 16, 1990, the court modified its previous order and granted NYHC and IHC the relief they requested except to the extent that it adhered to so much of the prior order as permitted Turbomeca Engine Corp. (hereinafter TEC) to seek recovery of legal fees and expenses in the event that TEC was ultimately found to be free of negligence. The Turbomeca defendants have separately appealed from the order made upon reargument (see, Lear v New York Helicopter Corp., [appeal No. 91-02399], — AD2d — [decided herewith]). Consequently, the appeal of NYHC and IHC from the order dated July 16, 1990 must be dismissed, as that order was superseded by the order dated October 16, 1990, made upon reargument. However, the appeal brings up for review so much of the October 16, 1990 order as adhered to part of the court's original determination (see, CPLR 5517 [b]).

We affirm the order dated October 16, 1990, insofar as reviewed. Under the prevailing law of the State of Texas, which the parties agree is applicable to the interpretation of the indemnification clauses herein, the court properly applied the "express negligence" rule to dismiss TEC's cross claims to the extent that they seek indemnity for TEC's own negligence (see, Ethyl Corp. v Daniel Constr. Co., 725 SW2d 705 [Tex]). However, in the event TEC is found to be free of negligence, it may be entitled to recover its legal fees and expenses from NYHC and IHC pursuant to its agreements with them (see, Patch v Amoco Oil Co., 845 F2d 571; Construction Invs. & Consultants v Smith, 776 SW2d 790 [Tex]). Accordingly, we decline to disturb the Supreme Court's determination in this regard.

SULLIVAN, J. P., MILLER, COPERTINO and PIZZUTO, JJ., concur.

Ordered that the appeal from the order dated June 18, 1990 is dismissed, without costs or disbursements; and it is further,

Ordered that the appeal from so much of the order dated October 5, 1990 as denied the plaintiffs' cross motion for leave to reargue is dismissed, without costs or disbursements; and it is further,

Ordered that the order dated October 5, 1990 is reversed, insofar as reviewed, on the law, without costs or disbursements, and the provision of that order which required that the plaintiffs provide English translations of certain German documents is deleted; and it is further,

Ordered that the order dated September 5, 1990 is affirmed, insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order dated March 8, 1991 is affirmed, without costs or disbursements; and it is further,

Ordered that the order dated July 16, 1990 which denied the motion of the defendants Turbomeca Company and Turbomeca Engine Corp. to dismiss the second amended complaint is affirmed, without costs or disbursements; and it is further,

Ordered that the appeal from so much of the order dated July 16, 1990 as denied that part of the motion by the defendants New York Helicopter Corp. and Island Helicopter Corp. which was for summary judgment dismissing the cross claims of the defendants Aerospatiale Helicopter Corp. and Turbomeca Engine Corp. is dismissed, without costs or disbursements, as that part of the order was superseded by an order of the same court, dated October 16, 1990, made upon reargument *(see, Lear v New York Helicopter Corp.,* [appeal No. 91-02399], — AD2d — [decided herewith]); and it is further,

Ordered that the order dated October 16, 1990 is affirmed, insofar as reviewed, without costs or disbursements.