739 A.2d 442 (1999)
325 N.J. Super. 353
John Douglas CARROLL and Sylvia Carroll, Plaintiffs,
v.
UNITED AIRLINES, INC., a corporation doing business in the State of New Jersey, Defendant/Third-Party Plaintiff-Respondent, and
JSS, Inc., Third-Party/Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 12, 1999.
Decided November 3, 1999.
*444 O'Donnell, Kennedy, Vespole and Piechta, West Orange, for third-party/defendant-appellant (Mark R. Vespole, of counsel; Maureen Le Pochat, on the brief).
Shanley and Fisher, Morristown, for defendant/third-party plaintiff-respondent (Bruce L. Shapiro, of counsel; Mr. Shapiro, Gregory B. Pasquale and Dana J. Scancarella, on the brief).
Before Judges PETRELLA, CONLEY and COBURN.
*443 The opinion of the court was delivered by, CONLEY, J.A.D.
This interlocutory appeal, on leave granted by the Supreme Court, involves the denial of third-party defendant's motion to dismiss the third-party complaint for lack of subject-matter jurisdiction and in personam jurisdiction. We affirm in part and remand in part.
Simply stated, plaintiff, a paraplegic passenger on defendant/third-party-plaintiff United Airline's (United) round-trip flight from Newark, New Jersey to Japan, was injured when he fell or was dropped while being disembarked from the plane in Japan. At the time, third-party defendant JSS, a Japanese corporation, was providing wheelchair services to plaintiff pursuant to a written agreement with United. As far as the present record reveals, JSS has no direct contacts with New Jersey or any other state in the nation. Its wheelchair agreement, however, contains an indemnification clause for injuries caused by its negligence to United's passengers. That was, of course, the basis for the third-party complaint against JSS seeking indemnification.

I.

Subject-Matter Jurisdiction
Subject-matter jurisdiction involves the threshold determination as to whether the court is legally authorized to decide the question presented. Gilbert v. Gladden, 87 N.J. 275, 280-81, 432 A.2d 1351 (1981). It concerns the forum or venue in which such jurisdiction is established by statute or rule. Not infrequently, however, and often in commercial settings, a forum is voluntarily selected and agreed to by the parties. Such forum selection clauses are enforceable, provided there are no countervailing fraud, public policy, or serious inconvenience concerns. Caspi v. Microsoft Network, L.L.C., 323 N.J.Super. 118, 122, 732 A.2d 528 (App. Div.1999); McNeill v. Zoref, 297 N.J.Super. 213, 219, 687 A.2d 1052 (App.Div. 1997); Wilfred MacDonald, Inc. v. Cushman, Inc., 256 N.J.Super. 58, 63-64, 606 A.2d 407 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992). Compare *445 Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc., 146 N.J. 176, 191-92, 680 A.2d 618 (1996) ("forum-selection clauses in contracts subject to the Franchise Act... are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the act."); Param Petroleum Corp. v. Commerce & Industry Insurance Co., 296 N.J.Super. 164, 167, 686 A.2d 377 (App.Div.1997).
Here, in its initial motion papers JSS argued that the New Jersey court lacked subject-matter jurisdiction over United's indemnification claim based upon a negotiated forum clause under which Japan was the proper forum. Here are the pertinent facts.
At the time of the accident, two separate contracts, negotiated on the same day, governed the relationship between United and JSS. One, entitled "Consigned Baggage Security Inspection Duty Commission Agreement," contained a clause that provided:
United Airlines and JSS agree that this Agreement shall be interpreted entirely according to Japanese law, and all legal actions arising from this agreement shall be under the jurisdiction of the Osaka District Court and the Osaka Summary Court.

[Emphasis added.]
By contrast, the second agreement, entitled "Memorandum" and concerning solely wheelchair services, did not specify a particular resolution of disputes arising thereunder. It is this agreement that contained the critical indemnification clause at issue here.
The only reference in this agreement to the baggage agreement is in the provision that set forth charges and terms of payment and which provided for such payment to be in accordance with the payment provisions of the baggage agreement. There is nothing in either of the documents that required them to be construed as one contract or that incorporated the forum provisions of the baggage agreement into the wheelchair agreement. And, since no discovery has occurred, there is nothing in the record that would suggest that was the parties' intent.
Where the terms of an agreement are clear, we ordinarily will not make a better contract for parties than they have voluntarily made for themselves, nor alter their contract for the benefit or detriment of either, particularly in a commercial, arms-length setting. E.g., Chemical Bank of New Jersey Nat. Ass'n v. Bailey, 296 N.J.Super. 515, 527, 687 A.2d 316 (App.Div.), certif. denied, 150 N.J. 28, 695 A.2d 671 (1997). In denying the defendant's motion to dismiss, the trial judge observed the existence of an express forum clause in the baggage agreement and commented: "[b]ut I don't know why they didn't really be more specific dealing with [forum selection], if they were so concerned, to make that apply to a personal injury." The simple fact is that, for whatever reason, the wheelchair memorandum does not contain a forum selection clause. JSS cannot rely upon the one contained in the other, separate baggage agreement.
It may be that the wheelchair memorandum does not contain a forum selection clause because United and JSS understood that services to be provided under that agreement would involve the embarkment and disembarkment of passengers. As such, claims arising therefrom would be governed by the international treaty commonly known as the Warsaw Convention (Convention).[1] For the signatory countries, the Convention establishes the exclusive remedy for damages arising from claims that fall within its substantive scope and establishes the *446 forum for such claims. El Al Israel Airlines v. Tseng, 525 U.S. 155, ___, 119 S.Ct. 662, 672-73, 142 L.Ed.2d 576, 590-93 (1999). The United States and Japan are signatory countries. Moreover, the injury to plaintiff, occurring as it did during disembarkment, falls within the substantive scope of the treaty.[2]
It is the forum clause of the Warsaw Convention, then, that United argues must be examined to determine whether the New Jersey court has subject-matter jurisdiction. In this respect, Article 28(1) of the Convention provides:
An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

[49 U.S.C. § 40105 (emphasis added).]
"[Q]uestions of procedure, [however] shall be governed by the law of the court to which the case is submitted." Article 28(2), supra. Since the final place of destination on plaintiff's round-trip ticket was Newark, New Jersey, United asserted, and the trial judge agreed, that the Convention reposed subject-matter jurisdiction in the Essex County court. See Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 167 (2d Cir. 1997); Butz v. British Airways, 421 F.Supp. 127, 130 (E.D.Pa.1976).
We pause at this point to note that, indeed, there are a number of cases construing the Convention's forum clause as creating four fora: 1) the air carrier's domicile; 2) the air carrier's principal place of business; 3) the air carrier's place of business through which the flight arrangements were made; or 4) the place of flight destination. Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 167 (2d Cir.1997); Potter v. Delta Air Lines, Inc., 98 F.3d 881, 886 (5th Cir.1996); Gasca v. Empresa de Transporte Aero del Peru, 992 F.Supp. 1377, 1380 (S.D.Fla.1998). On the other hand, there are as well a number of cases which have viewed the Convention's forum provisions as "national in scope." That is to say, "they determine the nation in which a suit under the Warsaw Convention can be brought, and not the place within that nation in which jurisdiction and venue are appropriate." Romero v. Argentinas, 834 F.Supp. 673, 677 (D.N.J.1993). See e.g., Smith v. Canadian Pac. Airways, Ltd., 452 F.2d 798, 800-01 (2d Cir.1971), overruled on other grounds, Benjamins v. British European Airways, 572 F.2d 913, 915 (2d Cir.1978); Donkor v. British Airways Corp., 62 F.Supp.2d 963, 966 (E.D.N.Y.1999) ("[u]nder the Warsaw Convention, a court must have both `treaty' and `domestic' jurisdiction ... treaty jurisdiction is governed by Article 28 of the Convention which supports four fora in which suit may be brought ... Domestic jurisdiction refers to the rules of the forum's courts."). Under this analysis, we are not sure that Essex County would be the proper venue, but JSS's motion is addressed to the national forum, not the particular local forum. At the least, the destination of plaintiff's flight would establish subject-matter jurisdiction in the United States.
JSS urges, however, that we must focus upon the particular dispute that draws it into the case, that is the particular claim underlying United's third-party complaint. That claim arises from JSS's contractual agreement to indemnify United for damages to United's passengers caused by its negligence. It is a contractual cause of action, notes JSS, distinct from plaintiff's *447 personal injury claim and does not, therefore, fall within the substantive scope of the Convention. Cf. McNeill v. Zoref, supra, 297 N.J.Super. at 221-22, 687 A.2d 1052 (contracting parties' forum agreement cannot "funnel" noncontracting parties into chosen forum). We reject this argument.
To begin with, there is no question but that the underlying complaint is governed by the Convention. Procedural questions thereunder are to be decided by the law of the forum. Article 28(2). Under our court rules, if venue pursuant to R. 4:3-2 properly exists for the main action, the fact that a third-party defendant may be entitled to a different venue does not dispossess the court of subject-matter jurisdiction, although a change of venue application may be considered under R. 4:3-3(a). Doyley v. Schroeter, 191 N.J.Super. 120, 125, 465 A.2d 583 (Law Div.1983); Pressler, Current N.J. Court Rules, comment R. 4:3-2.
Moreover, JSS, in providing the wheelchair services for disembarking passengers, is subject to the substantive provisions of the Convention. It is clear that the provisions apply to not only the air carriers, but as well to "everyone associated with the enterprise of transporting passengers, including agents who are engaged by the carrier to perform services in furtherance of carriage." Johnson v. Allied Eastern States Maintenance Corp., 488 A.2d 1341, 1343 (D.C.App.1985). See Reed v. Wiser, 555 F.2d 1079, 1083 (2d Cir.1977), cert. denied, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977).
In Johnson, plaintiff was injured in the course of wheelchair services provided by defendant pursuant to a contract with the air carrier. Defining "carrier" by the "in furtherance of carriage" test, the court concluded that defendant independent contractor was subject to the Convention. In doing so, it noted that a broad scope of the term "carrier" would ensure that the rules governing international aviation remain uniform and that the liability limitations remain intact, regardless of whom a plaintiff may choose to name as a defendant in a particular case. 488 A.2d at 1343.
The Warsaw Convention provisions, then, have been construed to apply to various third-parties when they are acting "in furtherance of carriage." See Baker v. Lansdell Protective Agency, Inc., 590 F.Supp. 165, 170 (S.D.N.Y.1984) (liability limitations in Warsaw Convention applied in action against agent performing security checks at airport); Chutter v. KLM Royal Dutch Airlines, 132 F.Supp. 611, 613 (S.D.N.Y.1955) (service company that provided the plane's entrance ramp was subject to the provisions of the Convention because its services were a part of the contract of transportation); Lear v. New York Helicopter Corp., et al., 190 A.D.2d 7, 12, 597 N.Y.S.2d 411, 414 (1993) (companies that inspected, maintained and repaired air-carrier's helicopters were subject to the terms of the Convention); Julius Young Jewelry Mfg. Co., Inc. v. Delta Air Lines, 67 A.D.2d 148, 149, 414 N.Y.S.2d 528, 529 (1979) (an inter-line baggage transfer company found to be subject to the provisions of the Convention because getting luggage to passenger's final destination was a service performed in furtherance of the contract of carriage); Waxman v. C.I.S. Mexicana De Aviacion, S.A. De C.V., 13 F.Supp.2d 508, 513-15 (S.D.N.Y.1998) (air carrier's cleaning subcontractor subject to provisions of Warsaw Convention). Compare Alleyn v. Port Authority of New iYork, 58 F.Supp.2d 15, 22-25 (E.D.N.Y.1999) (subcontractor performing terminal escalator maintenance services is not performing services related to air carriers' contract of carriage and, thus, not subject to provisions of the Warsaw Convention).
We recognize that plaintiff has not sued JSS directly. But we see no basis for concluding that United's claims for indemnification, arising from a covered accident, should not be properly a part of that action, subject to the Convention's provisions, including its forum provisions. *448 Magnus Electronics, Inc. v. Royal Bank of Canada, 611 F.Supp. 436, 440 (N.D.Ill. 1985) (rejecting the contention that the Warsaw Convention "plainly [only] provides rights to, and imposes corresponding burdens upon, the [Convention] plaintiff" and rejecting, therefore, the contention that cross-claims for contribution and indemnification are not covered by the Warsaw Convention); Data General Corp. v. Air Express International Co., 676 F.Supp. 538, 540-41 (S.D.N.Y.1988); Oriental Fire and General Ins. Co., Ltd. v. Citizens Nat. Bank of Decatur, 220 Ill. App.3d 671, 163 Ill.Dec. 98, 581 N.E.2d 49, 52-53 (1991); L.B. Smith v. Circle Air, 128 Misc.2d 12, 488 N.Y.S.2d 547, 550 (N.Y.Sup.1985).
We recognize that most of the cases that involve application of Convention provisions to cross-claims or third-party claims concern the application of the Convention's statute of limitations in the context of a claim for contribution from an air carrier where the main claim is covered by the Convention. But if cross-claims and third-party claims for contribution or indemnification are within the scope of the convention for the purposes of its statute of limitations, there is no reason why they would not also be subject to its forum provisions.
JSS, however, relies upon Sabena Belgian World Airlines v. United Airlines, Inc., 773 F.Supp. 1117 (N.D.Ill.1991), and Mitchell, Shackleton & Co., Ltd. v. Triangle Aviation Services, Inc., 704 F.Supp. 524 (S.D.N.Y.1989). In both of these cases, the courts declined to apply the statute of limitations provisions of the Convention to claims for indemnification. Mitchell did so concluding that the third-party defendant, a "ground handler," did not fall within the scope of "air carrier" or an agent thereof. The ground handler was considered a "non-carrier agent" and thus not covered by the Convention. Mitchell, supra, at 528. To the contrary, JSS, in its disembarking services, clearly is a "carrier agent."
As for Sabena, despite the fact that the Convention was found to apply to the underlying action, the court concluded that the policies of the Convention would not be served by applying the statute of limitations to the claim for indemnification. 773 F.Supp. at 1120. Thus, the court held that the Convention provisions did not apply.
The cardinal purpose, however, of the Convention has been described as achieving "uniformity of rules governing claims arising from international transportation." Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 551, 111 S.Ct. 1489, 1502, 113 L.Ed.2d 569, 587-88 (1991). United's claim against JSS arises from an incident that involves international transportation and services provided by JSS in connection therewith. Surely the Convention's policy of uniformity would be served by application of the Convention's forum provisions so that United's related claims for indemnification can be heard in the same forum as will hear the underlying triggering damages claims.

II.

In Personam Jurisdiction
Because JSS filed its motion before filing an answer, no discovery has been conducted, jurisdictional or otherwise. The record as to in personam jurisdiction, therefore, consists of a certification by a JSS employee that asserts that JSS is a Japanese corporation which has "no contacts whatsoever" with either New Jersey or the United States, that the wheelchair agreement was negotiated in Japan and that JSS "is in the business of conducting consignment baggage security inspections at airports in Japan."
What this listing of noncontacts omits, of course, is the fact that in providing wheelchair assistance to United's various passengers, JSS must have significant contacts with United States residents, including New Jersey. In this respect, it might reasonably be said that JSS must or should know that injuries it causes in its *449 disembarkment services will be subject to the Convention provisions, including its forum clause. As such, it as well, then, might reasonably be said that JSS could anticipate being "haled into" one of the four Convention fora which obviously could include New Jersey as a place of destination.
The legal principles governing in personam jurisdiction are well established. We touch on them briefly. R. 4:4-4(b)(1), the "long-arm jurisdiction" rule, has been construed to allow New Jersey courts jurisdiction over non-residents to the outer limits permitted by due process.[3]Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 469, 508 A.2d 1127 (1986) (citing Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971)); Jacobs v. Walt Disney World, Co., 309 N.J.Super. 443, 452, 707 A.2d 477 (App. Div.1998). As we restated recently in Blakey v. Continental Airlines, Inc., 322 N.J.Super. 187, 199-201, 730 A.2d 854 (App.Div.1999), a finding of due process "requires only that in order to subject a non-resident defendant to a judgment in personam, he must have certain minimum contacts with the forum such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'." Id. at 199, 730 A.2d 854 (quoting Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322, 558 A.2d 1252 (1989)). Thus, the test for personal jurisdiction has two facets: minimum contacts and fair play and substantial justice. Ibid. See Gendler, 102 N.J. at 472, 508 A.2d 1127 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 543 (1985)) (first step in a minimum contacts analysis is to determine whether the defendant has sufficient contacts with the forum state, the second step is to evaluate those contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice). Central to the consideration is whether the purposeful actions of the foreign defendant are such that the defendant should have anticipated being "haled" into the court asserting jurisdiction. Romero v. Aerolineas Argentinas, supra, 834 F.Supp. at 680. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980); Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. 106, 120-22, 649 A.2d 379 (1994), cert. denied, sub nom. WMX Tech., Inc. v. Canadian Gen. Ins. Co., 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995). The concern is that a defendant not be "haled into a jurisdiction solely as a result of `random,' `fortuitous,' or `attenuated' contacts." Lebel v. Everglades Marina, Inc., supra, 115 N.J. at 323, 558 A.2d 1252 (quoting Burger King Corp. v. Rudzewicz, supra, 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542). See Waste Management, Inc. v. Admiral Ins. Co., supra, 138 N.J. 106, 649 A.2d 379; Ragonese v. Rosenfeld, 318 N.J.Super. 63, 68, 722 A.2d 991 (Law Div.1998). And compare Harley Davidson Motor Company, Inc. v. Advance Die Casting Inc., 292 N.J.Super. 62, 75, 678 A.2d 293 (App.Div.1996), aff'd, 150 N.J. 489, 696 A.2d 666 (1997).
As we have described JSS' role in the disembarkment of United's international passengers, many of whom must come from New Jersey, it may be argued that JSS' specific contact with this New Jersey resident plaintiff, whose round-trip destination was New Jersey, would suffice for due process purposes. JSS has not asserted any particular unfairness in having to litigate the third-party complaint in New Jersey and, aside from some inconvenience, we can see none.
We, however, are somewhat reluctant to dispositively resolve the in personam jurisdiction issue here for two reasons. First, we have no cogent findings or conclusions *450 by the motion judge on the in personam jurisdiction issue. In fact, as we read his oral decision, we are not entirely sure the issue of in personam jurisdiction, as opposed to subject-matter jurisdiction, was separately considered. Moreover, United points out that jurisdictional discovery has not been conducted. In this respect, it says in its brief:
The crucial question is whether JSS "was aware or should have been aware" that the services it provides affect New Jersey residents. JSS is an active participant in United's performance of its contracts of carriage and receives an economic benefit from international airline tickets sold within the State of New Jersey. In addition, JSS's corporation structure,11 its performance of similar services for other airlines, and the terms of any such contracts, as well as a host of other issues, all may support personal jurisdiction over JSS and are matters that United should be allowed to explore before a dismissal is granted.
11 JSS is a joint venture in which Japan Airlines (JAL) is one of the joint ventures. Since JAL is subject to the Warsaw Convention as well as a participant in the IATA agreements and this Court would have little or no problem in finding JAL subject to a jurisdiction in New Jersey, discovery along such lines would be probative.
Although we are inclined to think there may be sufficient basis for in personam jurisdiction over JSS arising from its contact with plaintiff through its agreement with United, that conclusion may not be without question. We are convinced, therefore, that United should be permitted to engage in jurisdictional discovery before the issue is finally resolved. The trial judge should reconsider the issue after such discovery. See Makopoulos v. Walt Disney World, Inc., 221 N.J.Super. 513, 518-19, 535 A.2d 26 (App.Div.1987). Upon reconsideration, the judge should accompany his determination with findings of facts and conclusions of law sufficient for us to adequately review his determination in the event of further appeal. R. 1:7-4(a); Filippone v. Lee, 304 N.J.Super. 301, 306-07, 700 A.2d 384 (App.Div.1997).

III.
The denial of the motion to dismiss for lack of subject-matter jurisdiction is affirmed. The issue of in personam jurisdiction is remanded for discovery and reconsideration. We leave it to the trial judge to set an appropriate schedule for such discovery and reconsideration of the motion. We do not retain jurisdiction.
NOTES
[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. § 40105.
[2] Article 17 of the Warsaw Convention provides:

The carrier shall be liable for damages sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
[49 U.S.C. § 40105 (emphasis added).]
[3] Unlike subject-matter jurisdiction, in personam jurisdiction is not determined by the Warsaw Convention. Smith v. Canadian Pacific Airways, Ltd., supra, 452 F.2d at 801; Romero v. Aerolineas Argentinas, supra, 834 F.Supp. at 678.