223 N.J. Super. 80 (1987)
538 A.2d 365
SUSAN HALL LEAVITT, PLAINTIFF-APPELLANT,
v.
ALAN J. LEAVITT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 28, 1987.
Decided December 3, 1987.
Before Judges O'BRIEN and STERN.
*81 Susan Hall Leavitt, appellant, pro se.
Schachter, Cohn, Trombadore & Offen, attorneys for respondent (Michael J. Stanton, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiff filed a verified petition in the Family Court of New York seeking child support arrears from defendant, her former husband, and an increase in child support for their minor son. A judge of the New York court certified the matter to the Superior Court of New Jersey pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA). See N.J.S.A. 2A:4-30.24 et seq. The foreign support order was registered in this State, see N.J.S.A. 2A:4-30.58 to .61, and a summons was issued based on the New York complaint. See N.J.S.A. 2A:4-30.61. After a hearing, a judge of the Family Part concluded that, assuming that he had jurisdiction to entertain the application, plaintiff "ha[d] not presented sufficient evidence from which the Court could conclude that she was entitled to an increase in support for the child." In any event, he held that New York was the appropriate forum for the action, and therefore dismissed the New Jersey complaint. We affirm.
The parties were divorced in 1978. Both the husband and wife testified in the divorce proceedings and expressly indicated satisfaction with a separation agreement which was subsequently embodied in the divorce decree. The separation agreement was prepared by well-known and relatively large New York law firms which represented the respective parties. Paragraph 25 of the agreement reads as follows:
All matters affecting the interpretation of this stipulation and the rights of the parties hereto shall be goberned [sic] by the laws of the State of New York.
Paragraph 28 reads:
This stipulation may be enforced or modified only in the Supreme Court of the State of New York, County of New York, which shall retain jurisdiction with respect thereto, and the parties consent to the continuing jurisdiction of said Court.
*82 In 1981, again represented by counsel, but different attorneys for each party, the husband and wife amended the agreement. Among other things, the amendment included the following language in paragraph 7 thereof:
Each party represents that he or she has carefully read this Amendment to Stipulation and understands its provisions. The parties fully understand that inflation and other economic pressures will cause future expenses for the support of the child, including educational expenses, to substantially increase during the period covered by this Amendment to Stipulation. Each of the parties hereto warrants and represents that they have negotiated and agreed to the amendments hereto, being fully cognizant of the substantial likelihood of such increased expenses. In addition, the parties have considered the possibility that in the future, SUSAN HALL LEAVITT may earn little or no income and that she may have little or no assets. All such circumstances have been considered by the parties in making this agreement and in SUSAN HALL LEAVITT stipulating that she will make no claim for additional moneys [sic] for support as set forth in paragraph 3 of this Amendment to Stipulation substituting a new paragraph 5 to the Stipulation.
Paragraphs 9 and 10 of the Amendment provide as follows:
9. This Amendment to Stipulation may be submitted by either party, at his or her own expense to the Supreme Court of the State of New York, County of New York, and application may be made by either party upon written notice to the other, that the terms and provisions be incorporated in and become a part of the final decree of divorce which was granted on the 6th day of July, 1978, and that a statement with respect to such incorporation be added at the foot of the judgment of divorce; but such incorporation notwithstanding, this Amendment to Stipulation shall not be extinguished by merger as the result of such incorporation, but shall in all events survive such decree and be binding upon the parties.
10. No provision of this Amendment to Stipulation shall be changed or modified nor shall this Amendment to Stipulation be discharged or terminated in whole or in part, except by an instrument in writing signed by the party against whom the change, modification, discharge or termination is claimed or sought to be enforced.
The real question before us is whether the parties can agree that any issue concerning enforcement of a support order or its modification must be presented in a given State. We hold in the affirmative, at least in circumstances such as this where the person seeking enforcement and the subject of the support order remain residents of the State where enforcement is permitted under the agreement and whose law is to govern pursuant to the agreement.
*83 Both New Jersey and New York are parties to URESA. See N.J.S.A. 2A:4-30.24 et seq.; McKinney's Domestic Relations Law §§ 30-43.[1] Under the Act, upon registration of a foreign support order, the order:
shall be treated in the same manner as a support order issued by a court of this State. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner. [N.J.S.A. 2A:4-30.61(a)]
See also N.J.S.A. 2A:4-30.28, .31, .38, .41, .46.
In this case, plaintiff remains a resident of New York, where both parties lived during this marriage. Defendant has moved to New Jersey. The infant son remains in New York in the custody of his mother. Under these circumstances, involving a detailed and specific agreement, apparently negotiated with independent advice of counsel and which included an express waiver of any modification due to the recognition of the inflation factor and the possibility of changed circumstances, we conclude that the agreement must be subject to enforcement or amendment only in New York. This is particularly true because under the agreement, New York law would control as to the enforceability of the waiver provisions, and New Jersey has no interest in assuring support of the child who does not live here.[2]Cf. Philadelphia v. Austin, 86 N.J. 55, 64 (1981); Light v. Granatell, 171 N.J. Super. 557, 563, 564 (App.Div. 1979). See generally, "Laches or Acquiescence as Defense, so as to Bar Recovery of Arrearages of Permanent Alimony or Child Support," 5 A.L.R.4th 1015 (1981); "Construction and Application *84 of State Statutes Providing for Reciprocal Enforcement of Duty to Support Dependents," 42 A.L.R.2d 768 (1955). We are not here dealing with an agreement between residents of this State or involving a child residing in New Jersey. Cf., e.g., Lepis v. Lepis, 83 N.J. 139 (1980); Marsh v. Vetter, 167 N.J. Super. 425 (App.Div. 1979).
Affirmed.
NOTES
[1] New Jersey has adopted the 1968 revision to the Uniform Act, known as the "Revised Uniform Reciprocal Enforcement of Support Act," see N.J.S.A. 2A:4-30.25, see also N.J.S.A. 2A:4-30.1 to .23, repealed by L. 1981, c. 243, § 42, while New York has maintained the 1950 version.
[2] The 1985 amendments to URESA are designed to protect the interest of the County Welfare Departments. See N.J.S.A. 2A:4-30.41 to .60. Many URESA applications involve enforcement of orders to reduce welfare assistance. In this case, where no welfare recipient is involved, there is no New Jersey financial interest to protect.