686 A.2d 377

PARAM PETROLEUM CORPORATION, PLAINTIFF–APPELLANT, v. COMMERCE AND INDUSTRY INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 3, 1996—Decided January 2, 1997.

Before Judges KLEINER and COBURN.

*Valore Law Firm,* attorneys for appellant (*Jeffrey H. Suther-land,* on the brief).

*Crawshaw, Mayfield, Riordan, Turner, O'Mara, Donnelly, Thomas & McBride,* attorneys for respondent (*Michael J. O'Mara,* on the brief).

The opinion of the court was delivered by

COBURN, J.S.C. (temporarily assigned).

This is a declaratory judgment action. Plaintiff, a New Jersey Corporation, sues on a liability insurance policy relating solely to property located within this State. The insurance policy contains a forum-selection clause establishing a foreign state, where the insurance company is located, as the only place where litigation may be commenced. The question is whether we should decline jurisdiction. If not, the next question is whether we should accept the policy's choice-of-law provision which requires that the insured's rights be governed by the law of the foreign state.

Plaintiff Param Petroleum Corp. (Param), a small, "one-man" New Jersey Corporation, owns and operates a gasoline service

station in Burlington, New Jersey. Defendant Commerce and Industry Insurance Company (Commerce) is a New York corporation. One of its areas of specialty is insurance for pollution liability.

Commerce issued Param an "Underground Storage Tank Third–Party Liability and Corrective Action Policy" for the period April 7, 1994 to April 7, 1995. The policy was issued to cover pollution liability stemming from the underground gasoline storage tanks on plaintiff's gasoline station in New Jersey. The pertinent portion of the policy provides:

> In the event that the Insured and the Company dispute the meaning, interpretation or operation of any term, condition, definition or provision of this Policy resulting in litigation, arbitration or other form of dispute resolution, the Insured and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

In October 1994, the New Jersey Department of Environmental Protection advised Param that gasoline and gasoline derivatives from its underground storage tanks had been discovered in a nearby municipal sewage treatment plant. Param's attempts to obtain the benefits of its insurance policy with Commerce were unsuccessful. Consequently, Param filed a declaratory judgment action in Burlington County, the location of the insured gasoline station. Commerce moved to dismiss the action without prejudice based upon the forum-selection clause. The trial court granted the motion on that ground. Consequently, it did not reach the choice-of-law question. Plaintiff Param appeals. We reverse.

In *Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc.,* 146 *N.J.* 176, 680 *A.*2d 618 (1996), the Court discussed at length the historical development and present status of the law governing forum-selection clauses. *Id.* at 186–92, 680 *A.*2d 618. The Court adopted the modern view that such clauses will be given effect unless unfair, unreasonable, or contrary to public policy. *Id.* at 192, 680 *A.*2d 618. However, it then went on to hold, as have a number of states (*Id.* at 191, 680 *A.*2d 618) that forum-selection clauses would not be recognized when contained in agreements

subject to local franchise acts. With respect to the New Jersey Franchise Practices Act, *N.J.S.A.* 56:10–1 to –15. The Court said:

We hold that such clauses are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act.

[*Id.* at 193, 680 *A*.2d 618.]

The Court emphasized, in particular, the unfairness in permitting franchisees to be forced by the generally stronger franchisors to bear the burdens of litigating in distant forums, a circumstance which the Court believed would result in the abandonment of meritorious claims by the generally more marginally financed franchisees. *Id.* at 194, 196, 680 *A*.2d 618. Finally, the Court said:

Nor does our holding in any respect undermine the interests served by enforcing contracts freely negotiated by responsible parties with comparable bargaining power. We simply acknowledge that the vast majority of franchise contracts do not fit within that category.

[*Id.* at 197, 680 *A*.2d 618.]

The principles of *Kubis* govern here. Indeed, given the nature and purposes of insurance, the argument for the presumptive rejection of forum-selection clauses is even stronger in relation to insurance policies than it is for franchise agreements, as is evident from the following cases.

In *Saffore v. Atlantic Casualty Ins. Co.,* 21 *N.J.* 300, 310, 121 *A*.2d 543 (1956), the Court said:

The insurance business is affected with a public interest and, as such, it is subject to reasonable regulation and control in the exercise of the police power to serve the public need.

In *Howell v. Rosecliff Realty Co., Inc.,* 52 *N.J.* 313, 245 *A*.2d 318 (1968), the Court had this to say with respect to insurance:

The insurance industry is highly regulated to the end that insurance will be fairly written and by companies that are financially sound.

[*Id.* at 316, 245 *A*.2d 318.]

Insurance is so essential a part of the area of a State's primary responsibility that the State's power should not depend upon where the parties choose to contract for the insurance or to pay for the loss. The State's interest and its responsibilities to its citizens should be enough to support regulation ... of policies relating to risks

within its jurisdiction. Moreover, the foreign carrier, no less than the admitted company, is aided by the measures the State takes to limit the incidence of the losses covered by insurance.

[*Id.* at 324, 245 *A.*2d 318.]

[I]f there were activity within a State either in the making or in the performance of the contract, the State could exercise its governmental powers to further its undoubted interests in insurable risks within its borders.

[*Id.* at 325, 245 *A.*2d 318.]

Liability policies are matters of obvious State concern, not only with respect to the security of the insured but also with respect to the compensation of the injured claimants. To that end liability insurance is closely regulated, and as to some risks compulsory insurance is common.

[*Id.* at 326, 245 *A.*2d 318.]

In *Johnson Matthey, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co.,* 250 *N.J.Super.* 51, 593 *A.*2d 367 (App.Div.1991), the court faced a choice-of-law issue involving insurance contracts executed in Pennsylvania but relating to property and pollution risks in New Jersey. The court noted that the law of New Jersey provided greater protection for the insured and for those damaged by the insured's activity than that of Pennsylvania:

The primary insurance coverage issue is whether leakage of pollutants onto the land is a "sudden and accidental" occurrence. This is a concept appearing in the policies; Pennsylvania and New Jersey courts have reached different interpretations of the phrase. Both states say that coverage is afforded to sudden and accidental discharges of pollutants. Pennsylvania rules, however, that a pollution discharge occurring gradually over time is not sudden and accidental. *Lower Paxton Tp. v. United States Fidelity and Guar. Co.,* 383 *Pa.Super.* 558, 557 *A.*2d 393 (1989). New Jersey holds to the contrary that sudden and accidental discharges include a gradual release of pollutants. *Broadwell Realty Serv., Inc. v. Fidelity & Cas. Co.,* 218 *N.J.Super.* 516, 528 *A.*2d 76 (App.Div.1987).

[*Id.* at 54, 593 *A.*2d 367.]

Based upon *State Farm Mut. Auto. Ins. Co. v. Simmons' Estate,* 84 *N.J.* 28, 417 *A.*2d 488 (1980) the court concluded that in the absence of a choice-of-law provision in the insurance contract, the governing principle on choice-of-law was *Restatement (Second) of Conflict of Laws,* § 193. *Id.* at 54–55, 417 *A.*2d 488. Section 193 provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more

significant relationship under the principles stated in Sec. 6 to the transaction and parties, in which event the local law of the other state will be applied.

## The Court then explained why New Jersey law would apply:

The existence or absence of insurance proceeds can very well determine whether or not a waste site is remediated or a toxic tort victim is compensated. Not every polluter or other person responsible for an environmental wrong is financially sound, or is anxious to make personal assets available to satisfy adjudicated liabilities. New Jersey's paramount interest in the remediation of toxic waste sites, and in the fair compensation of victims of pollution, extends to assuring that casualty insurance companies fairly recognize the legal liabilities of their insureds. In *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co.*, 842 *F.*2d 977, 985 (8th Cir.), *cert. denied,* 488 *U.S.* 821, 109 *S.Ct.* 66, 102 *L. Ed.*2d 43 (1988), the Court of Appeals characterized the availability of comprehensive liability insurance coverage for the costs of cleaning up hazardous waste sites as a question of substantial importance to the public. *See also Leksi, Inc. v. Federal Ins. Co.,* 736 *F.Supp.* 1331 (D.N.J.1990); *Sandvik, Inc. v. Continental Ins. Co.,* 724 *F.Supp.* 303 (D.N.J.1989).

New Jersey' urgent concern is for the health and safety of its citizens. It is demonstrated by the enactment of the Spill Compensation and Control Act, *N.J.S.A.* 58:10–23.11 *et seq.;* the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 *et seq.;* the Sanitary Landfill Facility Closure and Contingency Fund Act, *N.J.S.A.* 13:1K–6 *et seq.,* and the Water Pollution Control Act, *N.J.S.A.* 58:10A–1 *et seq.; see* also *N.J.S.A.* 23:5–28 *et seq.* The gravity of the problem is out of doubt; the necessity of finding solutions is manifest. In the effort to find solutions, financial resources matter.

Pennsylvania's interest is relatively remote. As the locale of much of the creation of the insurance contracts, Pennsylvania has an interest in some of their aspects. It has no legitimate interest, however, in preventing the fair and predictable application of foreign law to Pennsylvania insurance contracts which are written to cover insureds' liability in other states.

[*Id.* at 57–58, 417 *A.*2d 488.]

## The Court also said:

They have not taken the simple and obvious step toward uniformity of inserting choice-of-law provisions in their policies. Such clauses may not always prevail, *see Restatement (Second) of Conflicts* Sec. 187 (1971), but they surely will in many situations.

[*Id.* at 59, 417 *A.*2d 488.]

The approach to choice-of-law in insurance cases discussed in *Johnson Matthey, supra,* was approved in *Gilbert Spruance v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 134 *N.J.* 96, 109–13, 629 *A.*2d 885 (1993).

Neither *Johnson Matthey* nor *Gilbert Spruance* expressly dictate the result in this case since neither case considered the enforceability of choice-of-forum or choice-of-law provisions in insurance policies. However, the policy considerations of those cases, viewed from the perspective of *Kubis,* supports our conclusion that choice-of-forum and choice-of-law agreements in liability insurance policies should generally be ignored at least when the insured risk is in this State.

Another indication of a strong state policy against agreements of this nature is contained in *N.J.S.A.* 17:32–1 to –22, the act governing foreign insurance companies, such as the defendant in this case.

*N.J.S.A.* 17:32–2.c., provides no such company shall be admitted to write insurance policies in this State until it:

> Constitutes, by a duly executed instrument filed in the department, the commissioner and his successor in office its true and lawful attorney, upon whom all original process in any action or legal proceeding against it may be served, and therein agrees that any original process against it which may be served upon the commissioner shall be of the same force and validity as if served on the company, and that the authority thereof shall continue in force irrevocable so long as any liability of the company remains outstanding in this State.

Furthermore, *N.J.S.A.* 17:32–16 provides:

> This act is deemed and declared to be remedial legislation for the protection of the health and welfare of persons resident in this State by subjecting nonadmitted insurers which solicit, insure, or cause to be solicited such resident persons to the laws which govern all foreign insurers which do business in the State of New Jersey. This act shall be liberally construed to effectuate its purpose and intent.

A forum-selection clause in a policy of insurance respecting property located wholly within New Jersey which requires litigation elsewhere would appear to be inconsistent with the above statutes. *N.J.S.A.* 17:32–2.c. is not simply a grant of jurisdiction (*Compare, Kubis, supra,* 146 *N.J.* at 201, 680 *A.*2d 618 (Garibaldi, J., dissenting)), it specifically establishes as a matter of legislative policy that foreign insurance companies must submit to this State's jurisdiction in "any action or legal proceeding." To permit a contrary private agreement would certainly violate the public

policy evidenced by this statute, since it would negate the submission to jurisdiction the statute commands.

The same reasons which impelled the Court to refuse giving effect to the choice-of-forum clause in *Kubis* are present here. Other courts have found these reasons compelling in analogous contexts. For example, the Supreme Court of the United States put it well in a case involving the question whether the due process clause was offended by California assuming jurisdiction over an insurance company which had no contact with that state other than mailing its policy to the plaintiff-resident:

The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses ... will be found in the insured's locality.

[*McGee v. International Life Ins. Co.*, 355 *U.S.* 220, 223–24, 78 *S.Ct.* 199, 201, 2 *L. Ed.*2d 223, 226 (1957).]

We are mindful that the *Kubis* Court did not entirely outlaw choice-of-law clauses in franchise agreements. The Court said:

Accordingly, we hold that forum-selection clauses in franchise agreements are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position. Evidence that the forum-selection clause was included as part of the standard franchise agreement, without more, is insufficient to overcome the presumption of invalidity. We anticipate that a franchisor could sustain its burden of proof by offering evidence of specific negotiations over the inclusion of the forum-selection clause and that it was included in exchange for specific concessions to the franchisee. Absent such proof, or other similarly persuasive proof demonstrating that the forum-selection clause was not imposed on the franchisee against its will, a trial court should conclude that the presumption against the enforceability of forum-selection clauses in franchise agreements subject to the Act has not been overcome.

[*Kubis, supra,* 146 *N.J.* at 195, 680 *A.*2d 618.]

However, we do not mean to imply that the same approach should be taken in the area of insurance. For as the Court noted in *Howell, supra,* the legitimate concerns of the State go beyond mere protection of the insured to protection for those claimants

who may have suffered damages as a result of covered risks. 52 *N.J.* at 326, 245 *A*.2d 318. Thus, at least when dealing with risks located wholly within this State, we are of the view that the parties to the insurance contract should not be permitted to negotiate away the protection of our courts, protection which is intended for the insured, the insurance company, and for those who may suffer damages as a result of an insured risk.

For the same reasons, we will refuse to enforce the choice-of-law aspect of this insurance contract. Consider, in that regard, comment *e* to Section 193 of the *Restatement (Second) Conflicts of Law* (1971):

> *Choice of law by the parties.* Effect will frequently not be given to a choice-of-law provision in a contract of fire, surety or casualty insurance which designates a state whose local law gives the insured less protection than he would receive under the otherwise applicable law for the same reason that effect is not given to such a provision if a life insurance contract (see § 192, comment *e*). Effect is more likely to be given such choice-of-law provision in a situation where the insured enjoys a relatively strong bargaining position (compare § 192, Comment *h* ), and particularly where in addition one or more of the insured risks is principally located in the state of the chosen law.

[*Id.* at 613.]

Reversed and remanded for further proceedings. We do not retain jurisdiction.