687 A.2d 1052

JANET MCNEILL, INDIVIDUALLY AND AS HEIR TO THE ESTATE OF RICHARD MCNEILL, PLAINTIFF–APPELLANT v. HAL ZOREF, MERCURY CAPITAL CORP., A CORPORATION D/B/I STATE OF NEW JERSEY, MARK GLEITMAN, JOHN WISNESKI, JAY NUSSBAUM, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 7, 1997—Decided February 4, 1997.

214

Before Judges DREIER, D'ANNUNZIO and NEWMAN.

*Kenneth E. Calloway,* attorney for plaintiff–appellant.

*Jack S. Zakim,* attorney for respondents Hal Zoref, Mercury Capital Corp., Mark Gleitman and Jay Nussbaum.

The opinion of the court was delivered by

216

NEWMAN, J.A.D.

Plaintiff Janet E. McNeill, individually and as heir to the Estate of Richard McNeill, (McNeill) appeals from the dismissal of her complaint on jurisdictional grounds. The motion judge determined that a forum-selection clause contained in a mortgage brokerage services agreement placed jurisdiction of McNeill's action in New York County. We disagree and reverse.

The factual background is as follows. McNeill and her husband acquired a marina in the Township of Lower, Cape May County, New Jersey from her husband's parents on May 18, 1971. The property was subject to a Small Business Association (SBA) loan. In 1989, the McNeills took an additional mortgage on the property for $100,000 which was used for improvements and maintenance. The mortgage was due in five years on a balloon payment. In 1993, McNeill and her husband sought to recast the loan.

At this juncture the McNeills spoke to defendant John Wisneski (Wisneski) regarding the recasting of their balloon mortgage loan. Wisneski was asked to find a mortgage company who would lend the McNeills the money. Local brokers had been unable to secure a mortgage for the McNeills. Following this discussion with Wisneski, an unidentified blond haired man and a company called "Snoopers" visited the property. Toward the end of 1993, McNeill spoke with an individual named Mark from defendant Mercury Capital Corp. (Mercury), the eventual mortgage lender. They spoke between three and five times concerning the progress of the loan. No discussion of monthly payments or debts which would have to be discharged from the proceeds of the mortgage other than the SBA loan were mentioned.

In December 1993 or January 1994, McNeill received a phone call from a Mercury representative informing her that there was a loan available and setting a settlement date of February 17, 1994. During this same time, McNeill's husband was fighting cancer. On February 1, 1994, McNeill's husband was admitted to the hospital. On February 10, Mercury informed McNeill that she needed to obtain a power of attorney for her husband in order to

complete the mortgage transaction. McNeill agreed and signed the papers which Mercury faxed to the hospital. Her husband placed an "X" on the documents indicating that he had transferred power of attorney to his wife.

On February 17, 1994, McNeill, her son-in-law and daughter drove to Mercury's office in New York City for the settlement meeting. Wisneski and defendant Mark Gleitman (Gleitman) were present. The meeting was scheduled to begin at 3 p.m. but did not commence until almost 5 p.m. when Eliot Bakst arrived. McNeill was not represented by counsel. The mortgage papers were signed in the presence of an attorney from Mercury named Mark. The mortgage was for $225,000 at an interest rate of sixteen percent per annum. An additional document signed that date was an "Agreement for Mortgage Brokerage Services." The parties to this agreement were only Gleitman and the McNeills. This agreement contained a forum-selection clause which provided that litigation arising out of the brokerage agreement would be venued in New York County.

Upon signing the mortgage, McNeill authorized Mercury to distribute the proceeds of the mortgage in accordance with a handwritten schedule. The distribution was done as follows:

3. The Deponent [McNeill] has authorized Jay Nussbaum, Esq. and Hal Zoref, as nominee to issue the following checks from the proceeds of the sale or the Deponents are making the following disbursements in connection with expenses incurred in the making of this loan:

| | | |
|---|---|---|
| a) | Jay Nussbaum, Esq | $2,250.00 |
| b) | Elliot Bakst | $375.00 |
| c) | East Coast Title Agency | $12,794.00 |
| d) | National Group, Ins. | $5,000.00 |
| e) | Snoopers | $850.00 |
| f) | Jeffery K. Israelow, as attorney | $5,817.81 |
| g) | Jeffery K. Israelow, as attorney | $209.97 |
| h) | Bureau of Fire Safety | $7,200.00 |
| i) | U.S. SBA | $6,020.00 |
| j) | Independence One | $91,403.41 |
| k) | Global Valuations | $1,900.00 |
| l) | Marc Gleitman | $30,375.00 |
| m) | John Wisneski | $7,875.00 |

| | | |
|---|---|---|
| n) | MCC Insurance | $900.00 |
| o) | Richard and Janet McNeill | $15,000.00 |
| p) | Richard and Janet McNeill | $37,029.81 |
| **TOTAL PROCEEDS (SUMS) DISBURSED** | | $225,000.00 |

McNeill was later advised that the $15,000 payment to her and her husband was an error. She was told that this money represented the first six months of interest payments, and she returned the check as requested. Out of the $225,000 loan McNeill received $37,029.81.

McNeill's husband died the same evening that she signed the papers settling the mortgage. She initiated this suit in September 1994 seeking to discharge the mortgage. On October 19, 1994, Mercury filed a complaint for foreclosure in the Chancery Division in Cape May County. That complaint was amended to include Hal Zoref, a defendant in this action, as nominal plaintiff for Mercury. The parties agree that the foreclosure action has been mooted in view of the fact that the subject property was sold and Mercury was paid for its mortgage loan under protest. Defendants (Zoref, Mercury, Gleitman, Wisneski, Nussbaum) brought a motion for summary judgment or, in the alternative, a dismissal of the complaint for lack of jurisdiction.

The motion judge concluded that the forum-selection clause was valid, finding that McNeill did not establish that the clause itself, as opposed to the contract as a whole, was the result of fraud or coercion. The motion judge dismissed the complaint for lack of jurisdiction and concluded that the matter should have been brought in New York.

On appeal, McNeill contends that the trial judge improperly granted summary judgment based on the forum-selection clause. McNeill argues there were factual issues of fraud, duress and deceit which would have defeated the forum-selection provision. McNeill also asserts that the forum-selection clause was included in the brokerage services agreement and, by its terms, only applied to Mark Gleitman. The other defendants were not parties to the agreement and, therefore, the court should not have dis-

missed the complaint as it pertained to them. We only discuss the second issue as it is dispositive of this appeal.

Defendants point out that McNeill did not raise below the issue of the propriety of the dismissal of the other defendants, except for Gleitman, under the forum-selection clause and should be precluded from raising it now. We need not dwell on whether it was properly presented below. McNeill asserts that she never expected the motion judge would dismiss the complaint on jurisdictional grounds as to all defendants when only Gleitman was a party to the brokerage services agreement. She contends that the lower court's result was not foreseeable under any circumstances. Not only do we agree with her observation, but an issue of jurisdiction may always be raised on appeal. *Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973); *Reynolds Offset Co., Inc. v. Summer*, 58 *N.J.Super.* 542, 548, 156 *A.*2d 737 (App.Div.1959), *certif. denied*, 31 *N.J.* 554, 158 *A.*2d 453 (1960).

Forum-selection clauses are enforceable in New Jersey. *Mayer v. Roche*, 77 *N.J.L.* 681, 75 *A.* 235 (E. & A.1909); *see Leavitt v. Leavitt*, 223 *N.J.Super.* 80, 82, 538 *A.*2d 365 (App.Div. 1987). The United States Supreme Court has found them to be "prima facie valid and [they] should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 *U.S.* 1, 10, 92 *S.Ct.* 1907, 1913, 32 *L.Ed.*2d 513, 520–21 (1972). New Jersey courts approach these clauses in a substantially similar manner. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 *F.*2d 190, 202 (3d Cir.), *cert. denied*, 464 *U.S.* 938, 104 *S.Ct.* 349, 78 *L.Ed.*2d 315 (1983). "Such clauses will be enforced unless the party objecting thereto demonstrates (1) the clause is a result of fraud or overweening bargaining power, or (2) the enforcement in a foreign forum would violate strong public policy of the local forum, or (3) enforcement would be seriously inconvenient for the trial." *Wilfred MacDonald Inc. v. Cushman Inc.*, 256 *N.J.Super.* 58, 63–64, 606 *A.*2d 407 (App.Div.), *certif. denied*, 130 *N.J.* 17, 611 *A.*2d 655 (1992).

Our courts have recently revisited forum-selection clauses and invalidated them when their enforcement contravened significant State interests. In *Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc.,* 146 *N.J.* 176, 192–93, 680 *A.*2d 618 (1996), the Court held that "forum-selection clauses in contracts subject to the Franchise Act ... are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the act." Also, in *Param Petroleum Corp. v. Commerce and Industry Insurance Co.,* 296 *N.J.Super.* 164, 686 *A.*2d 377 (App.Div.1997) we held that policy concerns required the invalidation of forum-selection clauses contained in insurance policies when dealing with risks wholly contained in New Jersey. This result was required to protect the insured, insurer and those who suffer damages from the insured risk.

There are other limitations to the enforcement of forum-selection clauses. For example, in *Dayhoff Inc. v. H.J. Heinz Co.,* 86 *F.*3d 1287 (3d Cir.1996), *cert. denied,* —— *U.S.* ——, 117 *S.Ct.* 583, 136 *L.Ed.*2d 513 (1996), the Third Circuit found that arbitration and forum selection clauses can only be enforced by the signatories to those agreements. In arriving at this holding, the *Dayhoff* court relied on *First Options of Chicago, Inc. v. Kaplan,* 514 *U.S.* 938, 115 *S.Ct.* 1920, 131 *L.Ed.*2d 985 (1995). The Supreme Court in *Kaplan* considered the applicability of an arbitration clause, a contract provision which is analogous to a forum-selection provision. There, the Court found that Kaplan was not required to arbitrate issues which Kaplan's corporation had agreed to arbitrate but not Kaplan individually.

> [A]rbitration is simply a matter of contract between parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.
>
> . . . .
>
> After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, "are enforced according to their terms," and according to the intentions of the parties.

[*Id.* —— *U.S.* at ——, 115 *S.Ct.* at 1924–25, 131 *L.Ed.*2d at 993–95 (citations omitted).]

■ An examination of the Mortgage Brokerage Services Agreement between Gleitman and McNeill indicates that the document was designed to stand on its own, separate from the mortgage note. The header of the document reads:

Marc P. Gleitman

Registered Mortgage Broker

NYS Banking Department

The section entitled "Parties to the Agreement" lists Gleitman as the only party other than the McNeills. The agreement gives "Marc P. Gleitman" the right to negotiate a mortgage for the McNeills for a period of six months. The agreement obligates Gleitman to broker a loan, the characteristics of which are listed in the agreement itself and are identical to the loan made between Mercury and McNeill on that same day. The agreement describes Gleitman's credentials and fees. Paragraph 10 contains the forum-selection clause and reads:

This is the entire agreement between you and us. In the event of litigation, you agree that the exclusive venue shall be New York County.

Nowhere in the document is Mercury or Zoref mentioned. The document is written in such a way that it assumes that no mortgage agreement exists. The purpose of the document was to obligate Gleitman, for consideration, to find his clients a mortgage. In fact, the brokerage services agreement expressly disavows Gleitman's capacity as a mortgage broker to make a loan to the clients. In return for Gleitman's services, McNeill was to pay him a fee of $30,375.

The brokerage services agreement was limited by its own terms to Gleitman alone. The remaining defendants, therefore, can not be funneled through the forum-selection clause of the brokerage services agreement into New York County for the purpose of litigation based on the mortgage agreement.

Defendants argue that Gleitman, however, is the primary defendant in the overall litigation because in addition to his role as the broker in securing the mortgage, he is president of Mercury, the mortgage lender. Defendants assert that: "[t]o the extent that plaintiff may conceivably have a valid cause of action against Gleitman or any of the other defendants, any such claims against the other defendants are derived from plaintiff's claim against Mark Gleitman." According to defendants, this relationship implicates the entire controversy doctrine and the mandatory joinder doctrine in such a way that the forum-selection clause should be applied to all defendants. We agree with defendants' observation, but conclude that it works in favor of and not against McNeill's position.

McNeill's claims on the mortgage loan do not arise out of the brokerage services agreement; McNeill's claims arise out of the mortgage agreement and supporting documents. The fact that Gleitman may have worn two hats in this mortgage loan transaction, one as the president of Mercury and the other as a mortgage broker, necessarily continues his connection to this litigation. It is Gleitman's choices that have put him into the litigation mix.

As pointed out, a forum-selection clause will not be enforced where it would violate the strong public policy of the local public forum. *Wilfred MacDonald Inc. v. Cushman, Inc., supra,* 256 *N.J.Super.* at 63–64, 606 *A.*2d 407; *see also Kubis, supra,* 146 *N.J.* at 192–93, 680 *A.*2d 618 (holding that the policy interests in the New Jersey Franchise Act require a franchisor to show that the forum-selection clause was not imposed on the franchisee unfairly); *Param, supra,* (holding that the interests of the State through its regulation of the insurance industry in protecting an insured, insurer and injured parties on an insurance policy respecting property located wholly within New Jersey outweighs the need to enforce a forum-selection clause requiring litigation elsewhere). That policy is found in the entire controversy doctrine which is firmly entrenched in this State. *Cogdell v. Hospital Ctr. at Orange,* 116 *N.J.* 7, 560 *A.*2d 1169 (1989). As a

result of the *Cogdell* decision, our Supreme Court adopted *R.* 4:30A which requires all claims against all potential defendants in one encompassing litigation. That doctrine has recently been reaffirmed and elaborated upon in a quartet of cases. *See Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 662 *A.*2d 509 (1995); *DiTrolio v. Antiles,* 142 *N.J.* 253, 662 *A.*2d 494 (1995); *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.,* 142 *N.J.* 336, 662 *A.*2d 536 (1995); *Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 662 *A.*2d 523 (1995). Most significantly, the entire controversy doctrine finds its underpinnings in "the constitutional unification of the state courts and the comprehensive jurisdiction vested in the Superior Court established under our Constitution which recognized the value in resolving related claims in one adjudication so that 'all matters in controversy between parties may be completely determined'". *N.J. Const.,* art. VI, § 3, ¶.4; *Mystic Isle Development Corp., supra,* 142 *N.J.* at 322, 662 *A.*2d 523. The threefold objectives behind the doctrine are (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation. *DiTrolio, supra,* 142 *N.J.* at 267, 662 *A.*2d 494; *Cogdell, supra,* 116 *N.J.* at 22–24, 560 *A.*2d 1169.

If we were to reverse the jurisdictional issue as to all defendants but Gleitman, we would be running against the grain of what the entire controversy doctrine was designed to achieve. We would thereby sanction that if any relief were obtained against defendant Gleitman under the brokerage services agreement, it would have to be secured in New York when all the remaining parties to the mortgage transaction that Gleitman was instrumental in producing would be in New Jersey. Under these circumstances, the forum-selection clause in the brokerage services agreement must give way to the strong public policy promoting the constitutionally based entire controversy doctrine. Conse-

quently, we decline to enforce the forum-selection clause in the brokerage services agreement.

Defendants ask that even if we were to determine that the complaint should not have been dismissed on jurisdictional grounds, that the dismissal be affirmed on summary judgment grounds that were argued below. Defendants urge us to engage in an independent review of the record and find that McNeill's allegations with regard to the federal truth-in-lending statutes and the general allegations of fraud and coercion be dismissed by way of summary judgment.

We decline to do so on the present record. The motion judge's decision did not address this aspect of the motion at all. We are persuaded that these issues are better addressed initially by the motion judge on as complete a record as possible.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.