**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4640-17T1

ERCO INTERIOR SYSTEMS, INC.,

    Plaintiff-Appellant,

v.

NATIONAL COMMERCIAL
BUILDERS, INC., d/b/a NCB
BUILDERS OF NEW JERSEY,
INC. c/o REGISTERED AGENTS,
INC.,

    Defendant-Respondent.

_____

Submitted March 5, 2019 – Decided May 7, 2019

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0259-18.

Kreiser & Associates, PC, attorneys for appellant (Travis L. Kreiser, on the briefs).

Hurvitz & Waldman, LLC, attorneys for respondent (Mitchell A. Waldman and Joshua K. Givner, on the brief).

PER CURIAM

Plaintiff ERCO Interior Systems, Inc. (ERCO) appeals from the Law Division's May 25, 2018 order dismissing its complaint against defendant National Commercial Builders, Inc. (National) with prejudice under Rule 4:6-2(e) based on a forum selection clause in the parties' subcontract, which provides that litigation relating to the subcontract "shall be brought only in the District Court of Johnson County, Kansas, and in no other court or location." We reverse.

I.

National, a corporation located in Lenexa, Kansas, entered into a contract with Rio Mall LLC, to construct movie screens in a theater at the Rio Mall in Rio Grande, New Jersey. National entered into a subcontract with ERCO, a New Jersey-based corporation, to install acoustical tiling in the theater. Paragraph D of the parties' subcontract provides that:

> [a]ny litigation arising out of or related to the Agreement shall be brought only in the District Court of Johnson County, Kansas, and in no other court or location. Regardless of where it is signed, this Agreement is deemed made in Kansas and shall be interpreted under Kansas law.

A dispute arose between ERCO and National regarding payment. Specifically, ERCO claimed it completed all the work as required by the

2

subcontract and invoiced defendant $23,500, but was only paid $10,019.75. Accordingly, ERCO filed a complaint in the Law Division against National seeking to recover the remaining $13,480.25 owed to it, plus pre- and post-judgment interest and attorney's fees. ERCO's complaint asserted claims for breach of contract, quantum meruit, unjust enrichment, violation of the Prompt Payment Act (PPA), N.J.S.A. 2A:30A–1 to –2, and amounts owed on a book account/account stated. With respect to its claim under the PPA, ERCO averred that National did not provide written notice of any disputes as to the invoices, and that it lacked a good faith basis to withhold payment.

National moved to dismiss ERCO's complaint and argued that the forum selection clause in the subcontract was knowingly and voluntarily entered by both parties. ERCO, relying on Kubis v. Perszk, Inc. v. Sun Microsystems, Inc., 146 N.J. 176 (1996), opposed the motion and asserted the forum section clause was invalid because it violated New Jersey's strong public policy, as codified in N.J.S.A. 2A:30A-2(f), which provides that "any civil action brought to collect payments [under the PPA] . . . shall be conducted inside of this State . . . ."

After hearing oral arguments, the court issued a written decision and order on May 25, 2018, granting National's motion and declining to invalidate

the forum selection clause. In its written decision, the court noted that forum selection clauses are presumed valid and enforceable in New Jersey unless they are the result of fraud or overreaching, or if enforcement would violate strong public policy, or would be unreasonable. The court found "no indication" that the clause resulted from fraud or overreaching, and determined the parties agreed to work on the project in New Jersey "freely and voluntarily in the interest of each of their respective businesses and trades."

Further, after reviewing the pertinent sections of the PPA, including the provision that civil actions brought under the PPA for payment must be conducted in New Jersey, the court rejected ERCO's claim that enforcement of the forum selection clause would violate New Jersey public policy. The court acknowledged that "New Jersey public policy does, in some circumstances, favor providing legislative protection to subcontractors performing construction work in New Jersey," but did "not find that this public policy was shown to be strong enough to override a freely negotiated forum selection clause." Finally, the court determined ERCO could cost-effectively litigate its claim in Kansas, that enforcement would not be so inconvenient as to be unreasonable, and that ERCO failed to establish "any exception to the

presumption of validity and the enforceability" of the parties' forum selection clause. This appeal followed.

## II.

On appeal, ERCO maintains the "plain and unambiguous" language of N.J.S.A. 2A:30A-2(f) establishes that "all claims under the [PPA] must be litigated in New Jersey," and contends "any forum selection clause at odds with the statutory mandate is invalid and unenforceable." According to ERCO, the PPA "includes a provision which confirms that the Act is controlling over any other applicable law," and the trial court "erred when it relied on . . . other conflicting law in granting" National's motion to dismiss.

Further, ERCO argues that the forum selection clause "is invalid and unenforceable because it violates New Jersey's strong public policy in favor of providing legislative protection to subcontractors performing construction work in New Jersey." Specifically, ERCO contends N.J.S.A. 2A:30A-2(f) expresses New Jersey's "right and public policy goal to protect the payment rights of all construction subcontractors" in "the State of New Jersey by and through the New Jersey [c]ourts." Moreover, ERCO claims that it would lose its protections under the PPA and "its basic contract right" to receive payment "if it were forced to litigate this $13,000.00 debt in Kansas" because ERCO's

A-4640-17T1

"ability to obtain payment would no longer be prompt or cost efficient." Thus, according to ERCO, "[a]s a practical matter," enforcement of the "forum selection clause would force ERCO to abandon its legitimate claims for payment and cause it to lose the benefits of the [PPA]." We agree with ERCO that the parties' forum selection clause is invalid because it subverts New Jersey's strong public policy, as embodied in the PPA, for the prompt and efficient payment of claims related to New Jersey-based construction disputes. We further conclude the requirement codified at N.J.S.A. 2A:30A-2(f), that all actions brought to collect payments under the PPA "shall be conducted inside of this State," is an integral part of that policy.

III.

"We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6–2(e) that governed the motion court." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014); Hoffman v. Supplements Togo Mgmt., L.L.C., 419 N.J. Super. 596, 605 (App. Div. 2011); see also Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 295 (3d Cir. 2001) (explaining the "interpretation and enforcement of a forum selection clause is a matter of law" subject to plenary review).

A-4640-17T1

"[F]orum selection clauses are prima facie valid and enforceable in New Jersey." Caspi v. The Microsoft Network, L.L.C., 323 N.J. Super. 118, 122 (App. Div. 1999) (quotation omitted). However, we have declined to enforce a forum-selection clause if: "(1) the clause is a result of fraud or 'overweening' bargaining power; (2) enforcement would violate the strong public policy of New Jersey; or (3) enforcement would seriously inconvenience trial." Paradise Enters., Ltd. v. Sapir, 356 N.J. Super. 96, 103 (App. Div. 2002) (quoting Caspi, 323 N.J. Super. at 122).

ERCO does not advance any argument that the forum selection clause is the result of fraud or the exercise of superior bargaining power by National. Instead, ERCO invokes the strong public policy and serious trial inconvenience exceptions.

New Jersey courts have declined to enforce forum selection clauses that violate public policy on several occasions. See Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc., 146 N.J. 176, 192-93, 195 (1996) (holding "forum-selection clauses in contracts subject to the Franchise Act," N.J.S.A. 56:10-1 to -31, "are presumptively invalid" because "general enforcement" of those clauses would "substantially circumvent the public policy underlying the Franchise Act"); McNeill v. Zoref, 297 N.J. Super. 213, 222-24 (App. Div.

1997) (declining to enforce a forum-selection clause in a mortgage brokerage services agreement when enforcement would be contrary to "the strong public policy . . . found in the entire controversy doctrine which is firmly entrenched in this State" (citations omitted)); Param Petroleum Corp. v. Commerce and Indus. Ins. Co., 296 N.J. Super. 164, 170–71 (App. Div. 1997) (refusing to give effect to a forum-selection clause in an insurance policy when the insured property was located in New Jersey and enforcement of the clause would violate the policy that the location of the insured risk should determine the forum).

"[T]he sources of law where a mandate of public policy may be found are expansive," Young v. Schering Corp., 141 N.J. 16, 29 (1995), and "include legislation; administrative rules, regulations or decisions; and judicial decisions." Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980). Our paramount goal in interpreting a statue is to discern the Legislature's intent, which we discern according to the statutory language "as written and not according to some unexpressed intention." Lehmann v. Kanane, 88 N.J. Super. 262, 265 (App. Div. 1965) (first citing Hoffman v. Hock, 8 N.J. 397, 409 (1952); then citing Dacunzo v. Edgye, 19 N.J. 443, 451 (1955)). Resort to extrinsic aids is generally appropriate only if the plain language of the statute

is ambiguous. Jen Elec., Inc. v. Cty. of Essex, 197 N.J. 627, 641 (2009) (quoting Bedford v. Riello, 195 N.J. 210, 221-22 (2008)). However, "when 'a literal interpretation would create a manifestly absurd result, contrary to public policy,' courts may consider the law's overall purpose for direction." Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012) (quoting Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392 (2001)).

The relevant statute here is the PPA, which has six subsections. Subsection (a) establishes the time period in which an owner[1] must pay "the amount due to the prime contractor for each periodic payment, final payment or retainage monies" if the prime contractor[2] has performed in accordance with the contract and the owner has approved the bill. N.J.S.A. 2A:30A-1(a). Similarly, but not identically, subsection (b) sets forth the time period in which

---

[1] "Owner means any person, including any public or governmental entity, who has an interest in the real property to be improved and who has contracted with a prime contractor for such improvement to be made," and includes the owner's agent or successor in interest. N.J.S.A. 2A:30A-1.

[2] "'Prime contractor' means a person who contracts with an owner to improve real property." N.J.S.A. 2A:30A-1. "'Subcontractor' means any person who has contracted to furnish labor, materials or other services to a prime contractor in connection with a contract to improve real property." Ibid. "'Subsubcontractor' means any person who has contracted to furnish labor, materials or other services to a subcontractor in connection with a contract to improve real property." Ibid.

a prime contractor must pay a subcontractor, and in which a subcontractor must pay a subsubcontractor, "the full amount received for the work of the subcontractor or subsubcontractor" if the payee has performed in accordance with the provisions of its contract, the prime contractor or owner has accepted the work, "and the parties have not otherwise agreed in writing . . . ." N.J.S.A. 2A:30A-2(b).

Pursuant to N.J.S.A. 2A:30A-2(c), "[i]f a payment due pursuant to the provisions of this section is not made in a timely manner, the delinquent party shall be liable for the amount owed under the contract, plus interest at a rate equal to the prime rate plus 1%." Subsection (d) permits a "prime contractor, subcontractor or subsubcontractor . . . after providing seven calendar days' written notice" to the delinquent party, to "suspend performance" of the contract "without penalty for breach of contract, until the payment required pursuant to this section is made," if the payee "is not paid as required by this section; [the payee] is not provided a written statement of the amount withheld and the reason for the withholding; and the payor is not engaged in a good faith effort to resolve the reason for the withholding." N.J.S.A. 2A:30A-2(d).

Paragraph one of subsection (e) establishes that "[t]he rights, remedies or protections provided by this section for prime contractors, subcontractors

and subsubcontractors shall be in addition to other remedies provided pursuant to any other provision of State law," and that if the PPA provides "greater rights, remedies or protections . . . than other provisions of State law," the PPA's provisions "shall supersede those other provisions." N.J.S.A. 2A:30A-2(e)(1). Paragraph two of subsection (e) prohibits the PPA from being "construed as restricting in any way the rights or remedies provided by any other applicable State or federal law to an owner who is a resident homeowner or purchaser" of the property. N.J.S.A. 2A:30A-2(e)(2). Finally, subsection (f) requires construction contracts to expressly permit alternative dispute resolution,[3] and further requires that "any civil action brought to collect payments pursuant to this section . . . shall be conducted inside of this State and the prevailing party shall be awarded reasonable costs and attorney fees." N.J.S.A. 2A:30A-2(f).

Interpreting the statute as a whole, we conclude the PPA embodies New Jersey's strong public policy to ensure that contractors performing construction work in New Jersey are paid promptly. And, the requirement in N.J.S.A. 2A:30A-2(f) that all "civil actions brought to collect payments pursuant to" the

_____

[3] The parties' subcontract does not contain a provision expressly permitting alternative dispute resolution. Neither party has raised this omission as relevant to any issue on appeal.

PPA "shall be conducted inside of this State" is an essential element of that policy.

The Legislature's affirmative command in subsection 2(f) is similar to statutes enacted in nearly half of our nation's states that either expressly deem forum selection clauses in construction contracts "against public policy" or otherwise "void and enforceable." See 7 Philip L. Bruner & Patrick J. O'Connor, Bruner and O'Connor on Construction Law § 21:30.10, n.2 (collecting statutes from twenty-four states). Such statutes restrict the forum for resolving construction contract disputes to the local forum.

Further, we conclude that application of the parties' forum selection clause would effectuate a result contrary to the principles underpinning the entire controversy doctrine. Indeed, as noted, civil actions under the PPA must be conducted in New Jersey. N.J.S.A. 2A:30A-2(f). Similarly, the Kansas Fairness in Private Construction Contract Act (KFPCCA), Kan. Stat. Ann. §§ 16-1801 to -1807, which provides rights, remedies, and protections to subcontractors who perform work in Kansas analogous to those provided in the PPA, also requires that venue of actions filed under the KFPCCA "shall be in the county where the real property is located," id. at § 16-1806, which in this case is Cape May County, New Jersey.

Thus, the practical effect of enforcing the parties' forum selection clause would be to require ERCO to adjudicate its common law claims for breach of contract, quantum meruit, unjust enrichment, and book account in Kansas, leaving it to adjudicate its statutory claims to prompt payment in New Jersey. Such a result would not only contravene New Jersey's strong public policy embodied in the PPA, but would also violate New Jersey's "strong public policy promoting [our] constitutionally based entire controversy doctrine,"  see McNeill, 297 N.J. Super. at 223, as it would result in improper fragmentation of litigation involving common facts and parties.[4]

National argues for the first time on appeal that because the PPA "is a New Jersey statute" and the subcontract provides that it was "made in Kansas" and "shall be interpreted under Kansas law," the PPA "is inapplicable."  We

---

[4] ERCO also argues that the PPA was designed to protect subcontractors from contractors' superior bargaining power, similar to the forum selection clause deemed unenforceable in Kubis.  In that case, our Supreme Court held that "forum-selection clauses in contracts subject to" the Franchise Practices Act, N.J.S.A. 56:10-1 to -31, "are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act." Kubis, 146 N.J. at 192-93.  In light of our decision that the PPA, and particularly N.J.S.A. 2A:30A-2(f), embodies New Jersey public policy, we need not determine if the public policy objectives underlying the Kubis decision are also applicable here.

note that because this issue was not raised in the court below, we need not address it.  See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).  Nevertheless, even considering the substance of National's belated choice of law argument, we conclude the point is without merit.

"When law suits are filed in New Jersey, we apply our choice-of-law rules."  Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy."  Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324, 341, 614 (1992).  The first step in any choice-of-law analysis is to determine, "on an issue-by-issue basis," whether "an actual conflict" exists between Kansas law and New Jersey law. See Kramer v. Ciba-Geigy Corp., 371 N.J. Super. 580, 597-98 (App. Div. 2004) (quotations omitted); see generally P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008) (explaining that, to determine whether an actual conflict exists, a court must "examin[e] the substance of the potentially applicable laws" of the states that have an interest in the matter).

14

Here, there is no conflict between Kansas and New Jersey law on the issue of where a claim for prompt payment of a construction contract must be litigated. See Kan. Stat. Ann. § 16-1806; N.J.S.A. 2A:30A-2(f). Under both the KFPCCA and the PPA, ERCO's claim for prompt payment must be filed in New Jersey, so there is no actual conflict of law and "no choice-of-law issue to be resolved." See Camp Jaycee, 197 N.J. at 143.[5] Moreover, National has not cited any principle of Kansas law, which would allow the prompt payment claims to be litigated in New Jersey, while other, related claims are litigated in Kansas.

In light of our decision, we need not address ERCO's alternative argument that serious trial inconveniences attendant to litigating this matter in Kansas support invalidating the parties' forum selection clause.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5]  Nothing in our opinion precludes the parties from raising in the trial court any choice-of-law issue involving an actual conflict between Kansas and New Jersey law.

A-4640-17T1