# United States Court of Appeals
## For the First Circuit

No. 05-1699

MICHEL ACEVEDO-REINOSO,

Plaintiff, Appellant,

MARÍA T. PACHECO-GONZÁLEZ

Plaintiff,

v.

IBERIA LÍNEAS AÉREAS DE ESPAÑA S.A.; JANE DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Lipez, and Howard, Circuit Judges.

Alfredo Fernández-Martínez, with whom Delgado & Fernández, LLP was on brief, for appellant Michel Acevedo-Reinoso.
Juan R. Marchand-Quintero, with whom Francisco Ortiz-Santini was on brief, for appellee.

May 23, 2006

**LIPEZ, Circuit Judge**. This case requires us to decide whether a passenger's state tort claim against an international air carrier was preempted by the Warsaw Convention[1] and therefore properly dismissed by the district court. For the reasons set forth below, we vacate the district court's judgment granting the motion to dismiss and remand for further proceedings consistent with this opinion.

## I.

The following facts are drawn from the complaint. Michel Acevedo-Reinoso is a citizen of Cuba with legal residence in the United States. At the time of this action, Acevedo-Reinoso resided in Puerto Rico. In October 2002, Acevedo-Reinoso, a banking executive, was invited to participate in an annual convention hosted by the Mortgage Loan Officers Association ("Association") in Madrid, Spain. The Association contracted with a travel agency, The Travel Place, to coordinate all travel arrangements for attendees to the convention. The Travel Place assured Acevedo-Reinoso that he would not require a visa, and instead need only show his Cuban passport and U.S. resident alien card upon entry to Spain. On November 13, 2002, Acevedo-Reinoso and his partner, Maria Pacheco-Gonzalez, a U.S. citizen (collectively,

---

[1] The Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. 876 (1934), note following 49 U.S.C. § 40105 [hereinafter "Warsaw Convention" or "Convention"].

"Plaintiffs"), arrived at the Iberia Líneas Aéreas Españolas, S.A. ("Iberia") airline counter in Puerto Rico to check in.  The Iberia agent informed Acevedo-Reinoso and Pacheco-Gonzalez that all immigration documents were in place and gave them their tickets and boarding passes.

Upon arriving in Spain on November 14, 2002, a Spanish immigration officer requested passports from all passengers.  When Acevedo-Reinoso showed his Cuban passport, the Spanish government ordered his immediate detention.  Acevedo-Reinoso was questioned, represented by counsel appointed by the Spanish government, and detained with other allegedly illegal immigrants in a closed room in the airport.  Meanwhile, Pacheco-Gonzalez suffered great anguish at seeing her partner detained in front of his peers in the banking industry, mocked by Spanish immigration officers, and humiliated. Acevedo-Reinoso's appointed counsel provided him with several documents for his review.  At the behest of a Spanish officer who told him the documents were for his own benefit, Acevedo-Reinoso signed the documents without reading them, and was subsequently told that he would be deported to his country of origin – Cuba. Acevedo-Reinoso suffered great anguish thinking about the punishment he would face at the hands of Cuban authorities upon returning to a country he was forced to leave many years ago, and the suffering – financial and otherwise – of his partner and two children who would be forced to live without him in Puerto Rico.

Later that evening, Acevedo-Reinoso was taken to another room where he was strip-searched and humiliated by a female Spanish officer. He was then taken to a detention room with hundreds of allegedly illegal immigrants, where he was served his first meal of the day and was ordered to pass the night in a cold room that included a row of bunk beds without sheets or blankets. During this time, Acevedo-Reinoso observed Spanish officers beating a young adolescent from Ecuador who stood up to visit the restroom. The following morning, after speaking with Pacheco-Gonzalez about a letter she had obtained from the General Manager of the hotel in Spain assuming responsibility for him during his stay, Acevedo-Reinoso inquired whether he could be sent back to Puerto Rico. Spanish officers declined to accept this proposition. Pacheco-Gonzalez was extremely nervous about her partner's future and the well-being of herself and her children. The following day, Acevedo-Reinoso was escorted by several Spanish guards to an Iberia airplane bound for San Juan, Puerto Rico, detained until airline crew boarded the airplane, and thereafter released.

As a result of the humiliation, emotional distress, and mental anguish they experienced, Plaintiffs sued Iberia, a foreign entity, in federal court, alleging negligence under Puerto Rico law.[2] On February 25, 2003, Iberia brought a motion to dismiss for

---

[2] Plaintiffs also sued The Travel Place and its owner in the Superior Court of Puerto Rico.

failure to join as indispensable parties The Travel Company and its owner. That motion was denied. Iberia then filed its answer to Plaintiffs' complaint. After discovery and the entry of a pretrial order, Iberia filed a second motion to dismiss, based on Plaintiffs' failure to state a claim under the Convention, and, in the alternative, under Puerto Rico law. The district court dismissed Plaintiffs' action for failure to state a claim under the Convention. Acevedo-Reinoso appealed.[3]

## II.

We review the district court's grant of Iberia's motion to dismiss de novo. See SFW Arecibo, Ltd. v. Rodríguez, 415 F.3d 135, 138 (1st Cir. 2005). To that end, we accept as true the well-pleaded factual allegations of the complaint, drawing all reasonable inferences in favor of the non-movant, Acevedo-Reinoso. See id. at 138-39. "Our goal is to determine whether the complaint, so read, alleges facts sufficient to make out a cognizable claim. In so doing, we are free to affirm on any basis supported by the record." Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002) (internal citations and quotation marks omitted).

---

[3] Pacheco-Gonzalez did not join this appeal.

**A.**      **Applicability of the Warsaw Convention**

        1.      The Warsaw Convention

The Convention, as amended by the Montreal Agreement,[4] governs the liability of international air carriers for "passenger injuries occurring 'on board the aircraft or in the course of any of the operations of embarking or disembarking.'"[5] <u>El Al Israel Airlines</u>, 525 U.S. at 172 (quoting Convention art. 17); <u>see</u> <u>Langadinos</u> v. <u>American Airlines, Inc.</u>, 199 F.3d 68, 70 (1st Cir. 2000). The Convention is preemptive: a carrier is not subject to liability under local law for passenger injuries "covered by" the

---

[4] While "[t]he United States initially adhered to the Warsaw Convention on October 29, 1934," <u>McCarthy</u> v. <u>Northwest Airlines, Inc.</u>, 56 F.3d 313, 316 n.2 (1st Cir. 1995), all references to the Convention herein are to that document as modified by Montreal Protocol No. 4. Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Signed at Warsaw on Oct. 12, 1929, as amended by the Protocol Done at the Hague on Sept. 8, 1955 [hereinafter Protocol No. 4] reprinted in S. Exec. Rep. No. 105-20, pp. 21-32 (1998). This protocol, "ratified by the Senate on September 28, 1998, amends Article 24 [of the Convention] to read, in relevant part: 'In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention . . . .'" <u>El Al Israel Airlines, Ltd.</u> v. <u>Tsui Yuan Tseng</u>, 525 U.S. 155, 174 (1999) (quoting Convention art. 24, as amended by Montreal Protocol No. 4).

[5] Article 17 of the Convention states, in relevant part, that

> [t]he carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Convention, that is, "all personal injury cases stemming from occurrences on board an aircraft or in embarking or disembarking." El Al Israel Airlines, 525 U.S. at 168 (adopting Government's construction of Convention); see also Convention art. 24 (stating that in personal injury cases "covered by" the Convention, "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention"[6]). The corollary is also true:

> the Convention's preemptive effect on local law extends no further than the Convention's own substantive scope. A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope: e.g., for passenger injuries occurring before any of the operations of embarking or disembarking.

El Al Israel Airlines, 525 U.S. at 172 (internal citations and quotation marks omitted); see also Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 456 (2d Cir. 2003) ("As a treaty adhered to by the United States, it is the supreme law of the land and trumps local law when it applies.") (emphasis added).

"Treaty interpretation," we have noted, "is a purely legal exercise." McCarthy, 56 F.3d at 317 (interpreting meaning of "embarking" and "disembarking" under Convention). Therefore, the question [of] whether a passenger's injury was sustained "on board

---

[6] Article 24 of the Convention states that "[i]n the cases covered by article 17 [i.e., personal injury cases]," Convention art. 24(2), "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention," Convention art. 24(1).

-7-

the aircraft or in the course of any of the operations of embarking or disembarking," Convention art. 17, "is a question of law to be decided by the court" based on the facts of each case, Marotte v. American Airlines, Inc., 296 F.3d 1255, 1259 (11th Cir. 2002). See also Schmidkunz v. Scandinavian Airlines Sys., 628 F.2d 1205, 1207 (9th Cir. 1980) (same). Since "[t]he terms 'embarking' and 'disembarking' are not specifically defined in the Convention," Marotte, 296 F.3d at 1259, and absent some direction from the Supreme Court, which has not yet had occasion to define them, we have found "(1) the passenger's activity at the time of injury, (2) his or her whereabouts when injured, and (3) the extent to which the carrier was exercising control . . . highly relevant in determining the applicability of [the Convention]." McCarthy, 56 F.3d at 317.

If the Convention applies (and local law is thereby preempted), the next question is whether the carrier is liable under the Convention. This inquiry involves a determination of whether there was an "accident," i.e., "an unexpected or unusual event or happening that is external to the passenger," Air France v. Saks, 470 U.S. 392, 405 (1985); whether the passenger suffered a compensable injury, i.e., "death, physical injury, or physical manifestation of injury," Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 552 (1991); and whether the accident was a proximate cause of the passenger's injury, see Langadinos, 199 F.3d at 71.

-8-

## 2. The District Court Proceeding

The district court held that Plaintiffs' Puerto Rico tort claim was preempted by the Convention because Plaintiffs failed to state a claim for liability under the Convention. According to the district court, "plaintiffs may not sue a carrier pursuant to state law if they are barred from recovering under the convention." The district court noted that Plaintiffs did not allege that "they suffered death, physical injury or physical manifestation of an injury" – one of the requirements for proving liability under the Convention.[7] Rather, Plaintiffs alleged only "humiliation, embarrassment, and great anguish" – none of which is compensable under the Convention. Since Plaintiffs were barred from recovering under the Convention, the court held that their claim under Puerto Rico law was likewise barred.

## 3. Application of the Warsaw Convention

Echoing the district court, Iberia notes that since "[t]he Warsaw Convention's dispositions provide the exclusive source of an airline's liability in international flights claims," Acevedo-Reinoso's claim falls short because he does not allege any physical injury or an "accident." Acevedo-Reinoso, on the other hand, argues that the court erroneously assumed the Convention's

---

[7] The district court noted that since Plaintiffs' claim failed to satisfy the injury requirement for liability under the Convention, the court did not need to decide whether Plaintiffs' claim satisfied the "accident" requirement for liability – i.e., whether Plaintiffs alleged that their injury resulted from an unexpected or unusual event or happening external to the passenger.

applicability without resolving the threshold issue of whether his injuries were "sustained . . . on board the aircraft or in the course of any of the operations of embarking or disembarking."[8] Convention art. 17. According to Acevedo-Reinoso, the Convention does not apply – and his Puerto Rico tort claim is therefore not preempted – because he was not embarking or disembarking when he sustained his injuries. Rather, Acevedo-Reinoso argues, his injuries were sustained "in Spain in a detention jail and [in] . . . being deported back to Puerto Rico in front of all the members of the Association."

We agree with Acevedo-Reinoso that the district court erroneously conflated the applicability of the Convention with liability under the Convention. The Convention's applicability rests on a determination of whether the passenger's injury occurred "on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention art. 17. If the Convention applies in a particular case, it is preemptive, and the trier of fact must then determine whether the carrier is liable under the Convention. See El Al Israel, 525 U.S. at 161 ("[R]ecovery for a

---

[8] Acevedo-Reinoso also argues that the district court should never have reached the merits of Iberia's second motion to dismiss invoking the applicability of the Convention. According to Acevedo-Reinoso, Iberia waived the arguments raised in the second motion to dismiss by not asserting them earlier in the proceedings. We are unpersuaded by this argument but see no need to discuss it in any detail since we decide this appeal in Acevedo-Reinoso's favor on the merits.

-10-

personal injury on board [an] aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all.") (internal citation and quotation marks omitted); see id. at 174 ("[I]n all questions relating to the carrier's liability, it is the provisions of the [C]onvention which apply and [] the passenger does not have access to any other remedies, whether under the common law or otherwise, which may be available within the particular country where he chooses to raise his action." (quoting Sidhu v. British Airways plc, [1997] 1 All E. R., 193 at 201, 207)).  If the Convention is not applicable, it is not preemptive, and the passenger is free to pursue his or her claim under local law.  Id. at 171-72 ("[T]he Convention addresses and concerns, only and exclusively, the airline's liability for passenger injuries occurring 'on board the aircraft or in the course of any of the operations of embarking or disembarking.'" (quoting Convention art. 17)).

Here, the district court assumed the applicability of the Convention, stating that "pursuant to El Al Israel, plaintiffs' only basis of redress is the Convention's passenger liability provision."  But El Al Israel does not support such an assumption. In that case, applicability of the Convention was not at issue because the parties explicitly agreed that "the episode-in-suit occurred in international transportation in the course of embarking."  El Al Israel, 525 U.S. at 167.  In this case, by

-11-

contrast, the parties dispute whether Acevedo-Reinoso's damages were sustained "in the course of any of the operations of embarking or disembarking," and, thus, whether the Convention is applicable.

Acevedo-Reinoso argues that Iberia's failure to advise him at the ticket counter of the need for a visa to enter Spain preceded his boarding the plane, and that his subsequent arrest upon arrival in Spain came well after he disembarked from the plane. Iberia, on the other hand, contends that its alleged failure to warn Acevedo-Reinoso at the airport in Puerto Rico and his ensuing arrest in Spain took place during the process of embarking and disembarking, respectively. Because the district court did not address this dispute, there was never any determination that the Convention was applicable and therefore preemptive of Acevedo-Reinoso's claim. See Marotte, 296 F.3d at 1260-61 (holding that the Convention preempted plaintiffs' state law claims where plaintiffs' injuries "occurred in the process of embarking, as contemplated by the Warsaw Convention"); see also McCarthy, 56 F.3d at 317 (holding that plaintiff was not engaged in the course of "embarking" under the Convention, based on "(1) the passenger's activity at the time of injury, (2) his or her whereabouts when injured, and (3) the extent to which the carrier was exercising control at the moment of injury"). The district court therefore erred in dismissing Acevedo-Reinoso's claim under the Convention without first determining whether Acevedo-Reinoso's

-12-

injury occurred on board the airplane or in the process of embarking or disembarking.

**B.      Liability Under Puerto Rico Law**

Even if the Convention is not applicable and therefore not preemptive, Iberia asks us to affirm on a different basis, arguing that the motion to dismiss was properly granted because Acevedo-Reinoso does not state a claim under Puerto Rico law.

1.      Contract Claim

Iberia contends that while Acevedo-Reinoso characterizes his claim as sounding only in tort, his claim also sounds in contract, based on the allegation in the complaint that Iberia "breached its contract to travel with Acevedo."[9]  Iberia further argues that, as between these two sources of law, "in Puerto Rico contractual law [] control[s] the scenario depicted in the complaint.  As a result, Acevedo cannot resort to general principles of tort law but must submit [himself] to the provisions applicable to contracts."  Furthermore, because "the parties did not contract for Iberia to assume the duty of verifying that Acevedo's papers were in order for entering Spain, a task that was Acevedo's personal obligation to comply with," Iberia argues that Acevedo-Reinoso's claim fails to state a claim for breach of

_____

[9] According to Iberia, "[t]he well-pleaded allegations []form a basic contract:  Acevedo would pay a specific monetary amount to Iberia, in exchange for safe transportation to Madrid, Spain."

-13-

contract under Article 1054 of the Civil Code of Puerto Rico, P.R. Laws Ann., Tit. 31, § 3018.[10]

Aside from language in the complaint briefly alluding to a contractual claim, Acevedo-Reinoso nowhere argues that Iberia breached a contract. On the contrary, Acevedo-Reinoso asserts that his claim "is without a doubt one in tort," and states in the complaint that his state law claims are "based on Article 1802 of the Civil Code of Puerto Rico" – the Puerto Rico statute governing tort claims, P.R. Laws Ann., Tit. 31, § 5141.[11] Nevertheless, even if we assume that Acevedo-Reinoso's claim sounds in both tort and contract, it does not follow that Puerto Rico contract law provides the remedy. In fact, the opposite is true: where the event that caused the damage results from the breach of both a contractual

---

[10] Article 1054 states, in relevant part, that

> those who in any manner whatsoever act in contravention of the stipulations of [their contractual obligations], shall be subject to indemnify for the losses and damages caused thereby.

P.R. Laws Ann., Tit. 31, § 3018; see also P.R. Laws Ann., Tit. 31, § 2994 ("Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations.").

[11] Article 1802 states in relevant part that

> [a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done.

P.R. Laws Ann., Tit. 31, § 5141.

-14-

obligation as well as a noncontractual duty not to cause harm to another, Puerto Rico law holds that an action for damages for breach of contract does not lie. According to the Puerto Rico Supreme Court:

> an action for damages for breach of contract [Article 1054] only lies when the damage suffered <u>exclusively</u> arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract. However . . . a claim for noncontractual damages resulting from the breach of a contract lies if the act that caused the damage constitutes a breach of the general duty not to injure anyone and, at the same time, a breach of contract.

<u>Ramos Lozada</u> v. <u>Orientalist Rattan Furniture, Inc.</u>, 130 P.R. Dec. 712, 727, 1992 P.R.-Eng. 755597 (P.R. 1992) (emphasis added). Iberia's argument regarding the application of Puerto Rico contract law is therefore unavailing.

        2.    Tort Claim

Iberia argues that even if Puerto Rico tort law applies to Acevedo-Reinoso's claim, his claim should still be dismissed. By contrast, Acevedo-Reinoso argues that the complaint adequately states a claim for negligence. We agree with Acevedo-Reinoso. Puerto Rico tort law "imposes responsibility for damages caused by negligence or fault. The necessary elements to prevail in [such a] tort action are: (1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." <u>Irvine, IRG</u> v. <u>Murad Skin Research Labs., Inc.</u>, 194 F.3d 313, 321-22 (1st Cir. 1999). The complaint alleges facts addressing each of these elements, stating

-15-

that Iberia's negligent acts or omissions – i.e., its "fail[ure] to advise [Acevedo-Reinoso] that he needed a visa in order to enter Spain" – caused Acevedo-Reinoso to be "detained by Spanish authorities in Spain, humiliated in front of his peers from the banking industry, and subjected to extensive mental anguish and sufferings."

Iberia's argument that an air carrier has no duty to advise passengers under Puerto Rico law is foreclosed by our decision in Compagnie Nationale Air France v. Castano, 358 F.2d 203 (1st Cir. 1966). In that case, three passengers and a relative sued an air carrier under Puerto Rico tort law for failing to advise them that they needed visas to enter Spain. We opined that

> the Puerto Rico court would . . . hold [that] where there was evidence that the defendant, as an inducement to plaintiffs to purchase passage, had held itself out as a tourist or travel agency, and had negligently failed to provide the information that plaintiffs had reasonably been led to expect, [] damages for negligence would include . . . proximate, though unforeseeable, injury of any sort.

Id. at 209. Applying this reasoning to the facts of that case, we held that "the unforseen suffering occasioned by defendant's failure to perform of the type here claimed can be compensated." Id. We noted, however, that "there was a substantial factual issue whether this damage was proximate, and whether the plaintiff or plaintiffs reasonably attempted to mitigate the damages." Id.

Here, Acevedo-Reinoso claims that he was injured by the failure of an air carrier to advise him that he needed a visa to

-16-

enter Spain. The facts alleged by Acevedo-Reinoso in this case are nearly identical to those alleged by the passengers in <u>Castano</u>, and thus are sufficient to state a claim for the negligent failure to advise under Puerto Rico tort law.[12]

### III.

In summary, we hold that the district court erred in granting Iberia's motion to dismiss based on the preemptive effect of the Convention, without first determining whether the Convention in fact applied to this case. On remand, the district court must determine whether Acevedo-Reinoso's injury occurred "in the course of any of the operations of embarking or disembarking." If the district court answers this question in the affirmative, the Convention will apply and will preempt Acevedo-Reinoso's Puerto Rico tort claim, thus limiting his claim to one that meets the

---

[12] Iberia's attempts to distinguish this case from <u>Castano</u> are unavailing. While <u>Castano</u> did not discuss the applicability of the Convention, our determination that Acevedo-Reinoso states a claim under Puerto Rico tort law does not depend on the applicability of the Convention. In fact, Acevedo-Reinoso's tort claim has effect only to the extent that the Convention does <u>not</u> apply (and does not preempt the tort claim). In addition, while we vacated three of the verdicts in <u>Castano</u> (and dismissed the fourth) and remanded for a new trial, the lack of a final disposition in that case does not render our holding under Puerto Rico law any less binding. <u>See</u> <u>Room</u> v. <u>Caribe Hilton Hotel</u>, 659 F.2d 5, 8 n.3 (1st Cir. 1981) (relying on <u>Castano</u> for proposition that "[u]nder Puerto Rico law a plaintiff may recover damages for mental suffering"). Finally, while it may be that "Iberia was in no position to induce Acevedo to purchase passage" and did not hold itself out "as a tourist or travel agency," these issues await further factual development at summary judgment or trial. At this stage in the proceedings, for the reasons discussed above, Acevedo-Reinoso has alleged sufficient facts to overcome Iberia's motion to dismiss.

requirements of the Convention.  If, on the other hand, the district court answers this question in the negative, the Convention will have no application and this case will go forward on the elements of the tort claim set forth under Puerto Rico tort law.  We **vacate** the district court's judgment granting Iberia's motion to dismiss and **remand** for further proceedings consistent with this opinion.  Costs of appeal are awarded to appellant.

**So ordered**.