979 So.2d 423 (2008)
Sallie BOWE, etc., et al., Appellants,
v.
WORLDWIDE FLIGHT SERVICES, INC., et al., Appellees.
No. 3D06-3188.
District Court of Appeal of Florida, Third District.
April 23, 2008.
*424 Louis Thaler, Miami, for appellants.
Wilson, Elser, Moskowitz, Edelman & Dicker and Clifford L. Rostin and Michael Sastre, Miami; Wilson, Elser, Moskowitz, Edelman & Dicker and Richard E. Lerner and Gary Gardner, NY; Rumberger, Kirk & Caldwell and Joshua D. Lerner and Rossana Navarro Mena, Miami, for appellees.
Before COPE, SHEPHERD, and SALTER, JJ.
PER CURIAM.
The question presented on this appeal from a final summary judgment rendered in favor of the defendants below, Worldwide Flight Services, Inc., American Airlines, Inc., and Miami-Dade County, is whether the Warsaw Convention[1] preempts state law claims made by the plaintiffs, Sallie Bowe and Virginia Deleveaux, individually and as personal representative of the Estate of Maude Ferguson, for injuries suffered as a result of an escalator accident at Miami International Airport. If so, the two-year statute of limitations contained in the Convention bars them from any recovery for their losses. Concluding on de novo review the defendants failed to satisfy the burden to be awarded a final summary judgment, we reverse the judgment on appeal and remand the case for further proceedings. A brief recitation of the facts, as found in the record, is necessary to our decision.

Factual Background
The plaintiffs in this case allege they were injured as a result of an accident that occurred on an up escalator as they exited an area the parties describe as a "bus depot," located one level below Main Concourse E at the airport, when Mrs. Ferguson, Mrs. Deleveaux's eighty-eight-year-old mother, apparently fell backward onto both Ms. Bowe and Mrs. Deleveaux, resulting in all three suffering personal injuries.[2] The complaint alleges the defendants were negligent by failing to fulfill a request for wheelchair assistance made for Mrs. Ferguson, which caused the plaintiffs *425 to fend for themselves and hence, the escalator accident.
The record reflects the accident in this case occurred on July 29, 2001. Ms. Bowe, Mrs. Deleveaux, and Mrs. Ferguson had just arrived in Miami on an American Eagle commuter aircraft from Nassau. The aircraft arrived at a freestanding building, separate from the main concourse. In accordance with practice for aircraft arriving at that location, Ms. Bowe, Mrs. Deleveaux, and Mrs. Ferguson departed the aircraft and boarded an American Airlines bus for the short trip to the main terminal. The bus brought them to the bus depot. Although it appears from the record the bus depot is served by two escalators and an elevator, at best the record is murky concerning ingress, egress, and the extent to which the general passenger populace on the concourses is free to enter the depot area.

I. The Warsaw Convention
As well-explained in many federal and state court decisions, the Warsaw Convention was signed in 1929 to aid and assist the then-fledgling commercial airline industry. See Marotte v. Am. Airlines, Inc., 296 F.3d 1255 (11th Cir.2002). To achieve this aim, the Convention sets forth uniform rules for claims arising out of incidents that occur during international air transportation. E. Airlines, Inc. v. Floyd, 499 U.S. 530, 552, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Where it applies, the Convention is the exclusive mechanism of recovery for personal injuries suffered on board an aircraft or in the course of embarking or disembarking from an airplane. El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) ("[R]ecovery for a personal injury suffered `on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' if not allowed under the Convention, is not available at all." (citation omitted)).
Article 17 of the Convention governs the liability of a "carrier" for personal injury suffered during the course of international air travel. It provides:
The carrier is liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
Warsaw Convention, art. 17. Where this provision applies, the "carrier" is strictly liable for damages up to the limits set forth in the Convention. Warsaw Convention, arts. 22, ¶ 1; 24, ¶ 1; Marotte, 296 F.3d at 1259; see also E. Airlines, Inc., 499 U.S. at 552, 111 S.Ct. 1489.
Finally, "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention." Warsaw Convention, art. 24, ¶ 1. Among these "conditions and limits" is a statute of limitations found in Article 29, which provides, in pertinent part: "The right to damages shall be extinguished if an action is not brought within 2(two) years, reckoned from the date of arrival at the destination, or the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." Warsaw Convention, art. 29, ¶ 1. The July 14, 2005 complaint filed by the plaintiffs in this case alleges, on behalf of each, a single state law cause of action sounding in common law negligence. Thus, if the Convention applies, their claims are time-barred.

Analysis
The preemptive effect of the Convention on local law extends no further than the Convention's own substantive scope. El Al Israel Airlines, Ltd., 525 U.S. at 172, 119 S.Ct. 662. In this regard, *426 it is clear from the text of the Convention it applies only to a "carrier." Warsaw Convention, art. 17. In addition, the Convention applies only to injuries occurring either on board an aircraft or "in the course of any operations of embarking or disembarking." Warsaw Convention, art. 17. These requirements constitute the initial inquiries we must make to determine whether the Convention is applicable to the claims being made and those we must consider here. If the Convention applies (and local law thereby is preempted), the next question is whether the carrier is liable under the Convention. Acevedo-Reinoso v. Iberia Lineas Aereas de España, S.A., 449 F.3d 7, 12 (1st Cir.2006) ("This [latter] inquiry involves a determination of whether there was an `accident,' . . . whether the passenger suffered a compensable injury, i.e., `death, physical injury, or a physical manifestation of injury,' and whether the accident was a proximate cause of the passenger's injury[.]" (citations omitted)). We do not reach this question.
The Warsaw Convention does not define "carrier." American clearly falls within the scope of the Convention insofar as it was engaged in this case in the "international carriage of persons, baggage, or cargo performed by aircraft" for compensation. Warsaw Convention, art. 1, ¶ 1. Worldwide argues it also acted as a carrier. Worldwide relies upon a line of cases holding that the term may include, in certain cases, the agent of an international airline. See Johnson v. Allied E. States Maint. Corp., 488 A.2d 1341, 1345 (D.C. 1985) (holding that the test to determine the applicability of the Warsaw Convention to agents or independent contractors is "whether the particular activity of the agent which resulted in injury was in furtherance of the contract of carriage"). Because it is conceded Worldwide operated as an agent of American for purposes of assisting American's passengers, see Dick v. Am. Airlines, Inc., 476 F.Supp.2d 61 (D.Mass.2007) (noting the existence of a contractual relationship between the two entities for providing wheelchair services to passengers at Miami International Airport), Worldwide will be considered a "carrier" as well for purposes of this appeal. The County admits it is not a "carrier" within the meaning of the Convention, but argues the services it provided the plaintiffs as operator of the airport entitle it to seek the benefit of the Convention. We disagree. We find no interpretive authority supporting the County's position, and decline to extend the reasoning of Johnson and its progeny, see Compania Panamena De Aviacion, S.A. v. Gerstein, 645 So.2d 55, 56 (Fla. 3d DCA 1994); see also Kabbani v. Int'l Total Servs., 805 F.Supp. 1033 (D.D.C.1992); In re Air Disaster, 776 F.Supp. 710 (E.D.N.Y.1991), to airport operators.
The Warsaw Convention also does not define or elucidate upon the phrase "operations of embarking or disembarking." See Warsaw Convention, art. 17. However, it is clear the term does not automatically exclude events transpiring, as is the case here, within an airline terminal building. Day v. Trans World Airlines, Inc., 528 F.2d 31, 33 (2d Cir.1975) (holding that airline passengers, victims of a terrorist attack inside restricted area of air terminal, were entitled to compensation under the Convention); accord Evangelinos v. Trans World Airlines, Inc., 550 F.2d 152 (3d Cir.1977). Rather than impose location-based or other rigid criteria to delimit these periods of liability under the Warsaw Convention, courts employ a three-prong test or guide to determine whether a passenger is entitled to seek the benefits of the Convention by considering: (1) the passenger's activity at the time of the accident; (2) the passenger's where-abouts *427 at the time of the accident; and (3) the amount of control being exercised by the carrier at the time of the injury. Acevedo-Reinoso, 449 F.3d at 12; Marotte, 296 F.3d at 1260; Evangelinos, 550 F.2d at 155; Day, 528 F.2d at 33. In addition, when considering these factors, these same courts have made clear that no single factor is dispositive. Marotte, 296 F.3d at 1260. Instead, "the three factors form a `single, unitary [analytical] base.'" Id. (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 317 (1st Cir.1995)). See also Evangelinos, 550 F.2d at 155 (observing that control "is an integral factor in evaluating both location and activity").
In this case, we conclude the defendants, American Airlines and Worldwide Flight Services, failed to meet their burden of demonstrating the absence of any genuine issue of material fact concerning American's control over the area where the plaintiffs fell. See Fla. R. Civ. P. 1.510(c); Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) ("Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law."). The only evidence we have found in the record concerning this factor is located in the plaintiffs' depositions and in the few photographic exhibits attached thereto. These depositions and exhibits strongly suggest, if not actually depict, the presence of two escalators and an elevator available to serve the bus depot. The plaintiffs understandably are not in a position to definitively account for their use. Indeed, the record is unsettlingly sketchy concerning ingress, egress, and the extent to which the general passenger populace on the concourses are free to enter, leave, or roam within the bus depot. Cf. Day, 528 F.2d at 31 (finding significant that the passengers in the Transit Lounge in question were in a restricted area and not free to "roam[ ] at will through the terminal"). Curiously, none of the movant-defendants, American Airlines, Worldwide Flight Services, or Miami-Dade County, offered evidence by affidavit or otherwise on this issue.
For these reasons, and without expressing any opinion on the merits, we reverse the summary judgment entered in this case and remand for further proceedings consistent with this opinion.
Reversed and remanded.
SHEPHERD and SALTER, JJ., concur.
COPE, J. (concurring in part and dissenting in part).
I agree on the reversal and agree that Miami-Dade County is not entitled to the benefit of the Warsaw Convention. See Compania Panamena De Aviacion, S.A., v. Gerstein, 645 So.2d 55, 56 (Fla. 3d DCA 1994).
In my view the record is sufficiently clear for us to rule that American Airlines and Worldwide Flight Services, Inc. are not entitled to the benefit of the Warsaw Convention. When the passengers left the bus, they entered the terminal. At that location there is a gate waiting area which is used for arriving and departing passengers. It is undisputed that these passengers were not being escorted by any agent of American Airlines or Worldwide. The "up" escalator led to Concourse E, which the passengers would use to reach the baggage claim area and the main airport lobby.
It is the consensus of the case law that once the passengers have come into the common areas of the airport at the conclusion of a trip, they have ceased the process of disembarking, at least where (as here) the passengers are not being escorted by an airline agent. "[C]ourts have found that plaintiffs were not in the course of disembarking when they were injured in *428 airport terminals." Alleyn v. Port Authority of New York, 58 F.Supp.2d 15, 20 (E.D.N.Y.1999) (collecting cases). The logic is that once the passengers are in the terminal and free to move about on their own (as these passengers were), they are not under the control of the airline, and the coverage of the Warsaw Convention ceases. Id.; see also Zuliana de Aviacion v. Herrera, 763 So.2d 499, 501 (Fla. 3d DCA 2000).
In my view, the passengers had clearly ceased the process of disembarking when they entered the terminal. American Airlines and Worldwide are not entitled to the benefit of the Warsaw Convention. There is no need for further development of the record as to American and Worldwide.
NOTES
[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 U.N.T.S. 11, reprinted in 49 U.S.C. § 40105 hist. n. (2007) [hereinafter the Warsaw Convention or the Convention].
[2] Mrs. Ferguson passed away in February 2004 for reasons unrelated to the alleged accident. Thus, her claim in this case is being prosecuted by her daughter, Mrs. Delevaux, as the personal representative of Mrs. Ferguson's estate.